## PLEASANT GROVE CITY v. LINDSAY.

No. 2316.   Decided April 11, 1912.   On application for rehearing June 10, 1912 (125 Pac. 389).

1. INTOXICATING LIQUORS—REGULATION—ORDINANCES. Laws 1911, chap. 106, sec. 68, providing that nothing therein shall prevent any city from enacting restrictions upon the traffic in intoxicating liquors in addition to, but not in conflict with, the provisions of the act, applies to future enactments only, and does not operate to keep alive existing ordinances not in conflict with the act.   (Page 158.)

2. INTOXICATING LIQUORS—REGULATION—REPEAL OF ORDINANCES—"TRAFFIC." Laws 1911, chap. 106, comprehensively regulating the liquor traffic, repealed by implication all municipal ordinances relating to the sale of intoxicating liquors existing on May 9, 1911, when it went into effect, regardless whether the municipality was "wet" or "dry" territory; the word "traffic" as used in the statute applying to illegal as well as legal sales. (Page 158.)

3. INTOXICATING LIQUORS—LEGISLATIVE CONTROL.    The Legislature has power to regulate or prohibit the liquor traffic in municipalities and to take control of such traffic away from municipalities.    (Page 159.)

4. INTOXICATING LIQUORS—ORDINANCE—PROSECUTION—REPEAL OF ORDINANCE.    Where a municipal ordinance relating to the liquor traffic was repealed by statute pending an appeal from a conviction for its violation, the prosecution was thereby terminated and the defendant was entitled to a dismissal.    (Page 160.)

5. CRIMINAL LAW—REPEAL OF ORDINANCE—PENDING PROSECUTION.    Comp. Laws 1907, sec. 2492, providing that the repeal of a statute will not affect any action or proceeding commenced under or by virtue of the statute repealed, has no application to municipal ordinances or any proceedings instituted under them.    (Page 162.)

STRAUP, J., dissenting.

APPEAL from District Court, Fourth District; *Hon. J. E. Booth,* Judge.

Joseph Lindsay was convicted of selling intoxicating liquors in violation of city ordinances, and he appeals.

REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.

*M. E. Wilson* for appellant.

*A. E. Moreton* for respondent.

FRICK, C. J.

Appellant, on the 13th day of April, 1911, was charged with having violated the provisions of a certain ordinance of Pleasant Grove City, Utah County, Utah, passed and in force after October 4, 1909. In the complaint it is charged that the offense was committed on April 3, 1911, and, upon a trial in the justice court in and for said city, appellant was convicted and sentenced under said ordinance. He appealed to the district court of Utah County, where he was again convicted and sentenced.

The ordinance in question, so far as material here, reads as follows:

"It shall be unlawful for any person to manufacture, sell, give away, barter, deal out, or otherwise dispose of any malt, spirituous, vinous, fermented or other intoxicating liquors within the limits of Pleasant Grove City. Any person who shall violate any of the provisions of this ordinance . . . upon conviction thereof shall be punished by a fine of not less than fifty nor more than one hundred dollars, or by imprisonment in the city jail for no more than one hundred days or by both fine and imprisonment."

The district court in effect instructed the jury that said ordinance was valid and in full force and effect. Appellant excepted to said charge and appeals to this court upon the sole ground that said ordinance, at the time of the trial in the district court, was not a valid and enforeceable ordinance. The invalidity of the ordinance is urged upon various grounds, but, for reasons unnecessary to be stated, we shall consider only one ground, namely, that, when this case was tried in the district court, said ordinance had been repealed by chapter 106, page 152, Laws of Utah, 1911, which went into effect May 9, 1911, and has been in effect throughout this state ever since. Chapter 106 aforesaid is a very comprehensive and most sweeping regulation of the manufacture, sale, barter, giving away, or otherwise dealing in or disposing of intoxicating liquors within the State of Utah. The act authorizes that the traffic may be licensed in the cities and incorporated towns of this state until the qualified electors thereof, as provided in the act, shall direct otherwise; and, in all other places outside of the cities and towns aforesaid, the traffic in intoxicating liquors is absolutely prohibited unless the qualified electors shall authorize the traffic under the terms and conditions imposed by the act. Every city and incorporated town, and every county district outside of any city or town, is, for the purpose of holding elections under the act, made a voting unit within which a majority of the qualified electors voting at any election may determine the status of such city, town, or county district with regard to whether

liquors shall be sold therein or not. The act provides for search and seizure, and also provides in what manner and by what courts or tribunals licenses shall be issued, and fixes the qualifications of the persons to whom they may be granted. It also provides the penalites for violations of any of the provisions of the act, and expressly provides that, in all cases upon a second conviction, the penalty must be increased, and certain other consequences must also be imposed by the court wherein conviction is had. The validity of chapter 106 is not assailed nor questioned, and, for the purposes of this decision, we shall assume that the ordinance in question was duly passed and published as required by law. The only questions that we shall consider, therefore, are: (1) Was chapter 106 in force and effect when appellant was tried and convicted in the district court; and (2) if so, did said chapter by implication repeal the ordinance in question?

Section 25 of article 6 of the Constitution of this state, so far as material here, provides:

"All acts shall be officially published, and no act shall take effect until so published, nor until sixty days after the adjournment of the session at which it was passed."

The Secretary of State certifies under his hand and the great seal of the State of Utah that chapter 106 was officially published on April 26, 1911, and that the session of the legislature at which the act was passed adjourned without date on March 9, 1911. Under the constitutional provision, the act, therefore, went into effect, unless otherwise provided therein, sixty days after March 9, 1911. By referring to the act itself, it is disclosed that all other provisions with regard to the regulation of the liquor traffic passed prior thereto and in force in this state are expressly repealed thereby. Nor is there any saving clause in the act whatever with regard to pending actions, or that prosecutions may be continued and penalties imposed except as in the act provided.

All that is found in the act in that regard is found in section 68 thereof, which reads:

"Nothing in this act contained shall prevent or prohibit any city council, board of trustees or board of county com-

missioners from enacting restrictions upon and regulations of
the traffic in intoxicating liquors *in addition to but not in con-
flict with the provisions of this act."* (Italics ours.) A
careful reading of this section shows that the legisla-
ture had reference only to future enactments, and not
to existing ordinances or past acts. The language of
the act is that the authorities referred to therein shall not be
prohibited from "enacting restrictions." This has reference
to future enactments only. If the legislature had intended
to recognize existing ordinances or past acts, it could easily
have indicated that intention by the use of proper language
in the very section we have quoted. Not having done so,
and, further, by clearly indicating by the language used that
it was the intention to authorize only future enactments upon
the subject, we are not authorized to interfere with the inten-
tion of the legislature when such intention is once ascer-
tained.

The act also contains conditions which require elections to
be held in the cities, towns, and county districts outside of
such cities and towns in the counties at large to determine
whether the traffic in intoxicating liquors shall be regulated
by licensing the same or whether it shall be entirely prohib-
ited. It is therefore provided that all licenses which were
granted under the existing law, which, by their terms, shall
be in force on the first day of October following such election,
shall terminate on that day, and, that the unearned
portion of the license money shall be refunded to the
licensees, and their right to sell intoxicating liquors
shall thereupon cease under the old law. The act also pro-
vides that elections may be held in any voting unit where au-
thority to sell liquor exists, and, if a majority of the qualified
electors of such voting unit vote "against sale," the traffic in
intoxicating liquors in said unit must cease on the 30th day
of September following such election. The act provides that
all elections held under it must be held in the month of June
in the year in which they are held. Such elections may be
held once in two years in any voting unit whenever a certain
per cent. of the qualified electors thereof petition the authori-

ties to call an election to determine the question of whether intoxicating liquors shall or shall not be sold within the voting unit aforesaid. It is apparent, therefore, that the right to sell may be terminated in any voting unit at any election, and thus the act makes provisions that those who are engaged in the traffic may have sometime after the election to adjust their business so as to comply with the law.

Let us assume that in Pleasant Grove City the sale of intoxicating liquors was prohibited, as appears from the ordinance in question, and that the electors in that city at an election held in June, 1911, voted to continue that policy in force, and that in June, 1913, those same electors shall again vote, and in doing so shall change the policy from that of "against sale" to "for sale," will any one seriously contend that, under such circumstances, the provisions of the act were not in force in said city until the policy was changed as aforesaid? It must not be assumed that it is the result of the elections which are provided for in the act that puts the provisions of the act as a whole in force or effect. The only effect the elections have, where a change is made thereby, is that the provisions of the act which are especially intended to meet such changes then become effective in accordance with the changed conditions produced by the elections. The act as a law is, however, in force in any city or town in any event. The mere fact that chapter 106 provides for changes in certain cities or towns, and that, in case such changes take place, it is stated or repeated in the act itself that the provisions thereof shall be in full force and effect after such changes take effect, does not prevent the act from having become effective before such changes were made. Indeed, the whole purport of the language of the act is to the contrary.

· Nor can there be any doubt that the legislature had full power to take the matter of regulating or prohibiting the liquor traffic from the control of the municipalities of this state. Woollen & Thornton, in their work entitled, "The Law of Intoxicating Liquors," in volume 1, sec. **3** 117, state the law in this regard in the following language:

"Municipalities—cities and towns—are simply smaller divisions of a state for its better government. They are the creatures of the Legislature—may be created or may be legally annihilated. To them the Legislature may confide its police powers for the regulation of local affairs and concerns, and, when given, it may be taken away without any cause whatever."

By adopting chapter 106, the legislature of this state simply provided methods for the entire regulation of the liquor traffic, and all cities and towns are prohibited from interfering with or permitting the traffic except upon the terms and conditions provided for in the act. The situation in this state, therefore, is much the same as it was in the state of Michigan when, in the year 1887, the legislature of that state passed a law for the regulation of the liquor traffic. · The Supreme Court of Michigan in *People v. Furman,* 85 Mich. 110, 48 N. W. 169, held that, in view that there was no saving clause in the act, all city ordinances relating to the liquor traffic existing in the cities were repealed by implication by said act. While the Michigan act was perhaps less sweeping in its provisions, and while it did not provide for elections as does chapter 106, yet, so far as the effect of existing ordinances is concerned, no distinction in principal is perceived between the Michigan act and our own. The Michigan case is therefore squarely in point upon the question of the repeal by implication of all ordinances regulating or prohibiting the sale of intoxicating liquors which were in force when chapter 106 took effect. The same rule is announced in *Naylor v. Galesburg,* 56 Ill. 285; *City v. Clark,* 68 Mo. 588; *Barton v. Gadsden,* 79 Ala. 495; *Rutherford v. Swink,* 96 Tenn. 564, 35 S. W. 554; and 1 Lewis' Sutherland Stat. Const. sec. 286. See, also, *State v. McCulla,* 16 R. I. 196, 14 Atl. 81.

If, therefore, the ordinance in question was repealed by implication by chapter 106, appellant's conviction under that ordinance must fall because it had ceased to exist before the judgment in the district court was entered.

If, however, chapter 106 had not gone into effect until after judgment was entered in the district court, this court

could not reverse upon the sole ground that the ordinance was repealed by chapter 106, for the reason that the district court would then have been the court of last resort, and the ordinance being in effect when the judgment was entered, the judgment could not be assailed because the ordinance was repealed after judgment. In 1 Lewis' Sutherland Stat. Const. (2d Ed.) sec. 286, the rule is stated thus:

"If a penal statute is repealed pending an appeal and before the final action of the appellate court, it will prevent an affirmance of the conviction, and the prosecution must be dismissed or the judgment reversed. A final judgment before repeal is not affected by it."

If, for the purposes of this case, therefore, we treat the district court of Utah County as the final court of appeal, then it follows that because chapter 106, which repealed the ordinance in question, went into effect long before the case was tried and determined in the district court, the case, under the rule above stated, should have been dismissed by that court and appellant discharged. The reason for holding the district court the court of last resort, for the purposes of this case, arises out of the fact that the objection we have discussed, namely, that the ordinance was repealed by chapter 106, could only be raised in this court if such repeal took effect before the judgment appealed from was entered, as stated by Mr. Lewis in the section we have quoted from. If the ordinance was in force when the judgment was entered, the judgment could not be assailed, for the reasons herein discussed, although it was repealed thereafter; but, if the ordinance was not in force at that time, then the judgment is not based on a valid ordinance which was in force when the judgment was entered, and hence the judgment must fall.

Nor is the judgment in this case saved by Comp. Laws 1907, sec. 2492, which provides:

"The repeal of a statute does not revive a statute previously repealed, nor affect any right which has accrued, any duty imposed, any penalty incurred, nor any action or proceeding commenced under or by virtue of the statute repealed."

41 Utah 11

Similar, if not identical, provisions are found in many of the states of the Union, and, so far as we have been able to learn, it has universally been held by the courts that such provisions were not intended to have, and do not have, any application to municipal ordinances, or to any proceeding instituted under them. The courts universally hold that, in case an ordinance is repealed, either expressly or by implication, as in the case at bar, all prosecutions based on such ordinances are terminated. This precise question was before the several courts and is passed on by them in all of the cases we have heretofore cited, and to which we refer. We are of the opinion, therefore, that, in adopting chapter 106, it was the intention of the legislature to supersede all legislation with regard to the liquor traffic, whether local or general. Nor can we perceive any reason why such a course was not both proper and practical. The question of the power of the cities and towns of this state to prosecute offenders under the act, or to what extent such cities and towns may pass ordinances prohibiting or regulating the traffic in intoxicating liquors and prosecute violators thereof, is not now before us, and we express no opinion with regard thereto.

In view that the conclusion reached results in a dismissal of the prosecution, it is not necessary for us to pass upon the other questions raised by appellant. Nor would it subserve any useful purpose if we undertook to discuss them.

The judgment is reversed, and the case is remanded to the district court of Utah County, with directions to dismiss the action and to discharge the appellant.

McCARTY and STRAUP, JJ., concur.

ON APPLICATION FOR REHEARING.

FRICK, C. J.

Counsel for respondent have filed a petition for a rehearing in which the result declared by this court is vigorously assailed. Upon a careful reading of the petition and argument in support thereof, we have been forced to the conclu-

sion that the decision is criticised more for what counsel assume is "indicated" than for what we said or decided. The burden of the argument is directed to the proposition that we erred in holding that, in adopting chapter 106 without a saving clause, the legislature intended to and did repeal all ordinances relating to the sale or traffic of intoxicating liquors, and that no convictions based upon the old ordinances which occurred since chapter 106 went into effect are legal. Counsel concede that such may be the legal effect of said chapter in what they are pleased to call "wet territory"—that is in those cities and towns where the sale of liquor was permitted when said chapter went into effect—but that such is not the case in "dry territory"—that is, in those cities and towns where the local laws or ordinances prohibited the sale of such liquors under the old law. We cannot follow counsel in their reasoning. The repealing clause of chapter 106 is couched in general language, and hence, *prima facie* at least, applies to all cities, towns, and voting units referred to therein, and not only to some of them. Moreover, chapter 106 must have gone into effect in Pleasant Grove City, the respondent, or no election could have been held therein as was done under the mandatory provisions of section 51 of said chapter on the 27th day of June, 1911, to determine the question of whether the electors of said city should vote for or against sale. What was true of Pleasant Grove City was likewise true of every other city and town in the State of Utah.

From a consideration of all of the provisions of chapter 106, one thing is made clear, and that is that the regulation or prohibition of the liquor traffic was to be placed into the hands of the voters of each locality by dividing the state into voting units so that the question of sale or no sale could be determined by a majority of the voters in each voting unit. In connection therewith it is also clear it was intended that the provisions of chapter 106 should govern and control the traffic in intoxicating liquors with the right of cities and towns to pass and enforce ordinances in accordance with the provisions of said chapter 106. This is in effect conceded

by counsel, but, as we understand them, they now contend
that there was no liquor "traffic" in dry territory, hence the
repealing clause in chapter 106 does not apply to such terri-
tory. The legal effect to be given chapter 106 would thus
be made to depend upon one word, namely, "traffic." We
cannot assent to such a rule of construction. But, even
though it depended upon the word "traffic," there may be,
and often is, an illegal or forbidden traffic, as well as a legal
or authorized one. Traffic in one sense means no more than
sales, and we think all will yield ready assent to the propo-
sition that there may be illegal as well as legal sales of liquor.
Indeed, the whole purpose of chapter 106 is to provide ways
and means whereby the voters through the proper officers can
either authorize or forbid the sale (traffic) of intoxicating
liquors in their respective voting units. All the provisions of
chapter 106, therefore, were intended to be in full force and
effect whether the voting unit was "wet" or was "dry" terri-
tory. That such was the purpose of the legislature is, we
think, clearly established, not alone from what is said in the
opinion, but also from the fact that, on the same day on which
chapter 106 was approved, amendments to all of the city and
town charters were also approved.

By referring to section 206x41, Laws Utah 1911, page
212, chap. 120, it will be seen that the provisions of that
section were modified so as to make them conform to the
provisions of chapter 106 so far as cities of the first, second,
and third classes were concerned, and by reference to section
302x6, Laws of Utah 1911, page 220, chap. 123, it is made
apparent that the same thing was done in so far as incorpo-
rated towns are concerned. If the legislature had merely
modified sections 206x41 and 302x6, and had re-enacted them
as modified, then ordinances that were passed under those
sections before they were modified would not have been re-
pealed except so far as they were repugnant to those sec-
tions, and, if nothing more had been done, we should not
have held them repealed. The legislature, however, did
much more than that. It adopted an entirely new method or
system of dealing with the liquor traffic, both as to its regu-

lation and as to its prohibition. In doing so, all laws upon the subject were repealed, and thus an intention was manifested to include the old ordinances within such repeal. It seems to us that no fair-minded person can arrive at any other conclusion.

But it is contended that it may be inferred from what is said in the opinion that the cities and towns of this state are shorn of their power to pass ordinances to regulate or to prohibit the traffic in intoxicating liquors and to impose penalties for the violation thereof. Even though we had not in express terms negatived the intention to so hold, the contention would, nevertheless, be without any basis. We had a right to assume, as we now assume, that the authorities of the cities and towns, as well as those of the counties, will enforce the laws enacted by the legislature so far as is within their power to do so. We also assumed that all the authorities would have recourse to chapter 106 and also to sections 206x41 and 302x6 as amended, and would consider the provisions of all of them as *in pari materia,* and, after harmonizing those provisions, as must be done, would adopt and enforce ordinances upon the liquor question as contemplated by the provisions aforesaid. The legislative intent that the provisions of chapter 106 be rigorously enforced is made apparent on every page of the act, and it is made especially so by what is said in section 68 thereof, when considered in connection with sections 206x41 and 302x6. It is also made apparent that the legislature intended that, where the sale is permitted, the traffic should be strictly regulated, and, where it is prohibited, the law should be enforced by both the city and county officials whose duty it is to enforce the laws.

We desire to add that we did not refrain from expressing an opinion upon the foregoing questions because, as counsel seem to think, we entertained a doubt as to whether the city and town authorities could pass any ordinances upon the subject of regulating or prohibiting the traffic in intoxicating liquors within their respective cities and towns, but the reason we refrained was because the question was not involved. From what is said and intimated by counsel in their argu-

ment in support of the petition for a rehearing, they seem to think that, from what is said or left unsaid in the original opinion, we entertain some doubt respecting the authority of the city and town authorities to pass and enforce any ordinances with regard to the regulation or prohibition of the liquor traffic. In view of this, we deemed it our duty to say a few words upon the subject to dispel the doubt. The question is not whether cities and towns may adopt and enforce any ordinances, but the question is whether there are not some penalties and consequences provided for in chapter 106 that local courts cannot enforce because of lack of jurisdiction. That question will be passed upon when it comes to this court in the regular way.

The petition for a rehearing is denied.

McCARTY, J., concurs.

STRAUP, J. (dissenting).

I think a rehearing should be granted. The only point decided by us is that the ordinance under consideration was repealed by implication by chapter 106, Session Laws 1911, and hence was not in existence when the defendant was tried and convicted in the district court. I am persuaded that our holding in that regard is erroneous, and that our opinion should be reconsidered and the presented questions of the invalidity of the ordinance on other grounds determined.

Prior to the Session Laws of 1911, the sale of and traffic in intoxicating liquors in this state were under a license system and under regulations and restrictions prescribed by statute and ordinances. Municipalities were given express authority to license, regulate, or prohibit the sale of intoxicating liquors. In pursuance of that authority, the ordinance in question was passed in 1909, prohibiting the sale of such liquors within the municipal limits. In March, 1911, the legislature adopted what is known as a local option system. It provided that each city, town, and county unit, as defined in the act, "shall constitute a separate and independent local option unit for the determination for itself, whether the sale

of intoxicating liquors shall be permitted or prohibited within such town, city, or county unit;" county unit being all that part of any county outside of cities and towns. It further provided for an election to be held in June, 1911, which was mandatory to determine whether the sale of intoxicating liquors should be permitted or prohibited within any city, town, or county unit. It also provided that the question could again be submitted to the electors every two years thereafter on petition for another election. Numerous provisions are made for the sale, regulation, and restriction of intoxicating liquors, and the granting of licenses in city, town, and county units, where the electors have declared for the sale of such liquors. It also provided that "nothing in this act contained shall prevent or prohibit any city council, board of trustees, or board of county commissioners from enacting restrictions upon and regulations of the traffic in intoxicating liquors in addition to, but not in conflict with, the provisions of this act."

The Laws of 1911 also provide that municipalities shall have the power "to license and regulate, or prohibit, the manufacturing, selling, giving away, or disposition in any manner, of any intoxicating liquor; provided no license for such purpose shall be issued by the city council of any city where the qualified electors of such city have voted 'against sale' of intoxicating liquors, and where the qualified electors have voted 'against sale' of intoxicating liquors, the city council of such city shall prohibit the manufacturing, selling, giving away, or disposition in any manner, of any intoxicating liquors, except the manufacture thereof as provided by law, and in any city where the qualified electors have voted 'for sale' of intoxicating liquors, such city council shall have the right to determine the amount to be paid for liquor licenses, as provided by law, and said licenses shall be subject to the same regulations as are required by the general laws of the state, and to provide such other reasonable regulations as such city council may deem advisable." (Chapter 120, sec. 206x41.)

The sections of the statute relating to the sale and regulation of intoxicating liquors, and the granting of licenses, were repealed, but the Laws of 1911 expressly preserved the power of municipalities to enact restrictions upon and regulations of the traffic in intoxicating liquors in addition to, but not in conflict with, the provisions of that act, of course, in those cities and towns where the electors declared for the sale of and traffic in intoxicating liquors. It also preserved the power of municipalities to prohibit the sale of and traffic in such liquors in cities and towns where the electors declared "against sale," and in such case expressly made it the duty of the municipalities to prohibit the sale, etc., of intoxicating liquors within the municipal limits. Of this there can be no doubt.

Now the effect of our holding in the original opinion is that all existing ordinances of municipalities were *ipso facto* repealed, not in express terms, but by necessary implication, by the act of 1911. I think that holding too broad.

There being no express terms of repeal or annulment of existing ordinances, I think only such ordinances as are repugnant to or inconsistent with the provisions of the act of 1911 were rendered ineffectual and void by that act. The act of 1911 expressly preserving to and giving municipalities power to enact ordinances regulating and restricting the sale of intoxicating liquors, not in conflict with the provisions of that act, in municipalities where the electors have declared for sale of intoxicating liquors, and to prohibit the sale of such liquors where the electors declared against sale, I do not see how an existing ordinance is rendered ineffectual or void by that act, unless the ordinance is inconsistent with the provisions of the act, or the result of the electors as declared by them at an election held in pursuance thereof. The election in June, 1911, was mandatory. I therefore assume that an election was then held in the municipality, at which time the question was submitted to the qualified electors thereof, of whether the sale of intoxicating liquors should be permitted or prohibited within the limits of the municipality. The record does not show what the result of that election was.

If the election of the municipality declared for sale, of course the ordinance in question prohibiting the sale of such liquors was rendered ineffectual. If, on the other hand, such electors declared against sale, then I do not see wherein the ordinance prohibiting the sale is, in such regard, annulled or affected. I, as a reviewing court, may do what perhaps the local court may have done—take judicial notice of the result of such election, and hence judicially know that the result was a declaration against sale. But I need not resort to that. The validity of the ordinance is assailed by the defendant, and I think it devolved upon him to show that the result was for sale, if such was the fact, and, in the absence of proof, should resolve the fact against him. I therefore assume the electors of the municipality declared against sale, and hence the existing ordinance prohibiting the sale was not in such particular annulled or affected. In such case it cannot well be said that the ordinance is repugnant to or inconsistent with the laws of 1911, for the legislature expressly provided that, where the qualified electors have voted "against sale" of intoxicating liquors, the municipality shall prohibit the sale, giving away, or other disposition of intoxicating liquors. And, if the municipality has an ordinance covering the subject and one complying with the command of the legislature, I do not see the necessity of declaring another. To say that the ordinance was repealed or annulled by the act of 1911, but that the municipality after the act went into effect could redeclare or re-enact the same ordinance, if the qualified electors voted against sale as I assume that fact to be, is, I think, inconsistent.

I therefore am of the opinion that a rehearing should be granted.