464 P.2d 844

**The STATE of Utah, Plaintiff
and Respondent,**

**v.**

**John Richard Mark MILLER, Defendant
and Appellant.**

**No. 11723.**

Supreme Court of Utah.

Feb. 5, 1970.

**2**

———◇———

Jay V. Barney, Salt Lake City, for appellant.

Vernon B. Romney, Atty. Gen., Lauren N. Beasley, David S. Young, Ronald J. Greenhalgh, Asst. Attys. Gen., Salt Lake City, for respondent.

CALLISTER, Justice.

Defendant appeals from his conviction of the crime of issuing a check against insufficient funds. He was sentenced April 7, 1969, to the Utah State Prison for an indeterminate term as provided by law. He seeks reversal of his conviction and an award of a new trial.

On January 16, 1968, defendant wrote a check for $95 to the Deseret Inn, as payee, to settle a motel bill and to receive some cash. The drawee bank was Walker Bank & Trust Company, University Branch, in Salt Lake City, Utah. The check was subsequently returned to the payee, with the notation "account closed."

According to the testimony of a bank employee, defendant had an account under the name of J. R. Miller, which was closed in June of 1966; he also had an account under the name of John R. Miller in May of 1967, but he had no account in January of 1968.

Defendant testified that at the time he wrote the check he was unaware the account had been closed and that he was apprised of such fact about two days later. According to defendant, he received a check for $347 on January 15, 1968; he endorsed the check and requested that a friend, Mr. Glad, cash the check, deposit $200 in Walker's and return the remaining cash to defendant. Defendant expected the deposit to cover the check he had written to Deseret Inn. Mr. Glad returned all the cash to defendant, and at this time defendant became aware the account was closed. Defendant then departed from town.

On appeal, defendant contends that the trial court erred by its refusal to give defendant's requested jury instructions de-

fining an intent to defraud, and further specifying that if the jury found that defendant possessed the intent to provide funds for payment, then he could not be found guilty of the crime charged. Defendant asserts that his proffered instructions were essential to avoid confusion and that without them the jury was left with the erroneous impression that mere lack of funds and knowledge thereof at the time of issuing the check constituted the crime. Defendant cites State v. Coleman [1] to support his argument.

In the Coleman case, after the jury had deliberated for two hours, they returned and asked the court a question, to which the court responded that the defendant must have money in the bank or an arrangement with the bank to pay it, *when he writes the check*. This court observed that such instruction was erroneous because if the proof indicated that defendant had arranged to have money or credit in the bank at the time the check was *presented for payment*, any intent to defraud would be negated.

In the instant action there was no misleading instruction as there was in the Coleman case. Instructions 9, 10, and 11 clearly set forth the law and each reiterates that defendant must know at the time that he has not sufficient funds or credit with the drawee for payment of the check in full

upon its presentation to establish an intent to defraud. The instructions given by the trial court substantially incorporated defendant's request, although they may not have emphasized the specific elements as defendant wished. There is no basis upon which this court may find prejudicial error.

■ Defendant further contends that the trial court erred by improperly ruling that some of defendant's testimony was hearsay, since the purpose of the testimony was to explain his conduct and not to assert the truthfulness of the statements made. Defendant testified that after he endorsed the check for $347, his friend cashed it and went to Walker Bank to deposit $200. The State objected on the ground that defendant had no personal knowledge, and anything Mr. Glad told him was hearsay. Defense counsel asserted that such information was an exception to the hearsay rule, since if defendant were informed that the bank had refused to accept defendant's money, this indicated defendant's intent at the time the check was written. However, defendant did testify that he instructed Mr. Glad to deposit the money and that he saw the proceeds of the check the following day, and that he had previously been unaware of his account being closed. Defendant testified that he unsuccessfully attempted to contact several people about the check and then left town for Portland.

1. 17 Utah 2d 166, 406 P.2d 308 (1965).

**4**

Defendant urges that the adverse ruling of the trial court deprived him of an opportunity to explain his good faith at the time of writing the check, i. e., how he first learned his account was closed, which in turn would clarify his subsequent conduct.

The record clearly reveals defendant's version, he sent his friend with the money to cover the check, and he had knowledge two days after he had uttered the instrument that the account was closed. Defendant has not made a proffer of proof of the excluded evidence to indicate in what manner his substantial rights were affected; therefore, there is no ground upon which this court may hold that any error committed by the trial court resulted in prejudice.[2]

Finally, defendant asserts that his case should be remanded to the trial court for resentencing in conformity with the new penalty provisions enacted by the 1969 Legislature. At the time defendant committed the offense and was tried, convicted, and sentenced his crime was a felony. Subsequently, Section 76-20-11, U.C.A., 1953, was amended by the legislature as follows:

(a) If such check, draft, or order or a series of the same made or drawn in this state within a period not exceeding six months amounts to a sum not more than $100, then a fine of not more than

$299 or imprisonment in the county jail for not more than six months, or both.

Defendant urges that the check he uttered was for the sum of $95; therefore, the maximum penalty which could be imposed would be six months in the county jail.

Defendant cites Pleasant Grove City v. Lindsay,[3] wherein the following principle is quoted.

If a penal statute is repealed pending an appeal and before the final action of the appellate court, it will prevent an affirmance of the conviction, and the prosecution must be dismissed or the judgment reversed. A final judgment before repeal is not affected by it.

In the Lindsay case this court observed that the statutory saving clause was not applicable since a city ordinance was involved. In the instant action Section 68-3-5, U.C.A., 1953, is controlling; it provides:

*The repeal of a statute does not* revive a statute previously repealed, or *affect* any right which has accrued, any duty imposed, *any penalty incurred,* or any action or proceeding commenced *under or by virtue of the statute repealed.* [Emphasis added.]

We, therefore, hold that the saving clause of Section 68-3-5, U.C.A., 1953, preserved the former punishment of Sec-

2. See Section 77-42-1, U.C.A., 1953.

3. 41 Utah 154, 161, 125 P. 389 (1912).

tion 76–20–11, U.C.A., 1953, and defendant is not entitled to have his case remanded for sentencing in accordance with the new statutory penalties. The judgment of the trial court is affirmed.

CROCKETT, C. J., and TUCKETT, HENRIOD, and ELLETT, JJ., concur.