483 P.2d 425

**Albert Nolan BELT, Plaintiff and Appellant,**

v.

**John W. TURNER, Warden, Utah State Prison, Defendant and Respondent.**

**No. 11936.**

Supreme Court of Utah

April 6, 1971.

Henriod, J., dissented and filed opinion in which Callister, C. J., concurred.

Richard C. Cahoon, Salt Lake City, for plaintiff and appellant.

Vernon B. Romney, Atty. Gen., Lauren N. Beasley, Harry E. McCoy, Asst. Attys. Gen., Salt Lake City, for defendant and respondent.

ELLETT, Justice:

We granted a rehearing in this case so as to be able to consider the possible effect on other prisoners who may now be incarcerated in the Utah State Prison and who were sentenced after a statute amended the penalty by making it less severe for a crime which was committed prior to the amendment.

As to those defendants who were sentenced prior to the amendment, the statute gives no aid.[1]

The appellant asserts that the Miller case is controlling here, and the dissenting justices in the prior decision thought that we must overrule State v. Miller if we do not reverse our holding in the instant matter.

 The power of the legislature to repeal or amend the penalty to be imposed for crime is not a matter of judicial concern. It is a part of the sovereign power of the state, and it is the exclusive right of the legislature to change or amend it; and if the amendment becomes effective before a final judgment of sentence is pronounced, the amendment controls the punishment to be meted out, provided it does not raise a constitutional question of being an ex post facto law by reason of increasing the punishment. If the state wishes to declare a lesser penalty for a crime,

it may do so, and no constitutional question would be involved.

The general law set out below is taken from 21 Am.Jur.2d, Criminal Law, Sections 577 and 578:

The power of a legislative body with respect to punishment for crime is practically unlimited, and is controlled only by constitutional provisions. Subject to this qualification, the legislature may fix the punishment for crime as it sees fit, and where a particular punishment is prescribed, no other may be imposed.

Statutes are frequently adopted that change the nature, degree, or kind of penalty or punishment to be imposed for the commission of a criminal act. Thus, the mode or place of confinement of a prisoner, the length of imprisonment, or the time or method of execution may be altered by statute. Provisions of this kind are valid, except as they operate to increase or enhance punishment for crimes committed before their enactment, in which case they are invalid as ex post facto legislation.

Punishment must be inflicted according to the law at the time of the judgment, when subsequent to the judgment a statute is enacted mitigating the punishment for the crime. * * *

 State v. Miller is unlike the present matter in that sentence had already been

1. State v. Miller, 24 Utah 2d 1, 464 P.2d 844 (1970).

pronounced before the statute was amended. The judge there followed the law in force at the time of judgment, and so we affirmed. In the instant matter the statute was amended before the judgment of sentence was imposed, and the judge followed the law in force and effect at that time.[2] We do not find any conflict between the instant matter and the Miller case and, therefore, reaffirm the prior decision.

TUCKETT and CROCKETT, JJ., concur.

HENRIOD, Justice (dissenting).

I dissent and refer to my former dissent.

Here is a defendant who was ordered but failed to appear for sentence on *March 10, 1969,* after deliberately violating his probation. The law providing for a lesser sentence for the offense *for which already he had been convicted* by pleading guilty on *October 28, 1968,* was passed by the legislature *on January 30, 1969,* just *11 days* prior to the date upon which he was to be sentenced. The law did not become effective until *May 13, 1969,* some two months later. Defendant conveniently left the State and disappeared until after May 13, 1969. He conveniently reappeared thereafter and presented himself for sentence on September 25, 1969, and was assessed the penalty extant at the time he

2. The dissent assumes that Mr. Belt left the state for the purpose of getting the benefit of a reduced penalty. One wonders if he even knew about a proposed amendment to the statute. There is nothing in the record to show anything other than that he left the state without having first obtained permission to do so from his parole officer. The record shows only the following:

1. October 14, 1968—Arraignment with sentence set for October 28, 1968.

2. October 28, 1968—Mr. Belt was present in court, and the minute order of the court reads: "Report and Imposition of Sentence was set for Monday, February 3, 1969, at 10:00 a. m., and in the meantime the defendant was placed on probation with the Adult Probation Department. A term of probation is that the defendant serve SIX (6) MONTHS in the Weber County Jail. If the defendant is a model prisoner he may receive 2 days credit for each day served. Defendant is to make full restitution on the checks and is to keep out of further trouble."

3. November 20, 1968—The defendant was released from the balance of his Weber County probationary jail sentence and released to the sheriff of Davis County on a "Hold" there in effect.

The record is silent as to what became of Mr. Belt thereafter; whether he was extradited on the "hold," or released by the sheriff is not revealed. The record does show, however, that on the 10th day of March, 1969, the defendant did not appear in court and a bench warrant was issued for his arrest. There does not appear in the record any reason why he should have then appeared, as he was to be sentenced on February 3, 1969. There is no minute entry for that date.

4. March 25, 1969—An affidavit of the parole officer was filed stating that Mr. Belt had violated the terms of his parole by leaving the state without permission and requesting that probation be revoked

5. September 25, 1969—Mr. Belt was sentenced and committed to prison.

There are no other entries which would give any light on the reason why Mr. Belt was not in court on February 3, 1969.

committed the offense. He was hardly depediculated at the prison, when on October 16, 1969, he petitioned the court for release under statute. The trial court turned him down. Now we accommodate him.

Now, let's take the case of John Richard Mark Miller, of State v. Miller, 24 Utah 2d 1, 464 P.2d 844 (1970),—the case which I thought *was* and think *should be* controlling here. Mr. Miller, apparently a criminal with an honor unpossessed by Belt, showed up for sentence on an identical same charge, in compliance with the court's order,—and on time,—*April 7, 1969,* two months after the law was passed, but only one month before it became effective. He was sentenced on that date and can be made to serve up to *14 years* in state prison under the statute that existed at the same time he and Belt committed the same crime, and in virtue of the decision here,—while Belt, by his own unlawful escape from the State and his deliberate violation of his probation, has a maximum obligation to serve but *six months* in a county jail. Any lawyer worth his salt could have obtained five or six weeks continuance for the purpose of sentencing Miller,—or Miller could have done it the easy, effective way condoned by this court by defying the law and bolting as did Belt,—in which event he now would be free as a bird under this decision.

This is the type of case a citizen simply cannot comprehend,—one the like of which provoked a person of pronounced promi-nence once to remark, on being queried about a case, that: "If that's the law the law is an ass!"

If Belt is the beneficiary of the changed penalty here, there is absolutely no sense or reason why Miller and every other inmate confined under the same charge should not be released instanter if they have served six months.

CALLISTER, C. J., concurs in the dissenting opinion of HENRIOD, J.