*This opinion is subject to revision before final publication in the Pacific Reporter*

**2026 UT 13**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee,*

*v.*

JAMES PAUL FEATHERSTON,
*Appellant.*

No. 20240050
Heard September 8, 2025
Filed May 7, 2026[*]

On Direct Appeal

Third District Court, Salt Lake County
The Honorable Randall N. Skanchy
No. 161906299

Attorneys:

Derek E. Brown, Att'y Gen., Mark Field, Asst. Solic. Gen.,
Salt Lake City, for appellee

Benjamin Miller, Debra M. Nelson, Salt Lake City, for appellant

JUSTICE PETERSEN authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, JUSTICE HAGEN,
ASSOCIATE CHIEF JUSTICE POHLMAN, and JUDGE MABEY joined.

Due to his retirement, JUSTICE PEARCE did not participate herein;
DISTRICT COURT JUDGE JENNIFER A. MABEY sat.

JUSTICE NIELSEN became a member of the Court after oral
argument in this matter and accordingly did not participate.

---

[*] As of January 31, 2026, "The Supreme Court consists of seven justices." UTAH CODE § 78A-3-101(1). Pursuant to Utah Supreme Court Standing Order No. 18, this court sat and rendered judgment in this matter as a division of five justices.

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1   Defendant James Paul Featherston pled guilty to aggravated kidnapping based on an unlawful detention. He was sentenced to fifteen years to life in prison, and he appealed. At the time of Featherston's sentencing, his crime was classified as a first-degree felony. But while his appeal was pending, the legislature amended the statute to reduce the offense level to a third-degree felony.

¶2   Featherston moved under Utah Rule of Criminal Procedure 22(e) for resentencing under the new statute. He relied on the amelioration doctrine—a common law doctrine that allows a defendant to claim the benefit of a statutory penalty reduction if it is enacted before the case becomes final at the conclusion of any direct appeal. He argued that the amelioration doctrine applied in his case because his appeal was still pending when the statute was amended to lessen the punishment for his crime.

¶3   The district court denied the motion, concluding that Utah appellate precedent holds that criminal sentences are governed by the law in effect at the time of sentencing. However, the court acknowledged that Utah caselaw has not expressly addressed the amelioration doctrine.

¶4   Featherston asks us to adopt the common law amelioration doctrine in Utah. In support, Featherston points to Utah Code section 68-3-1, which states that the common law "shall be the rule of decision in all courts of this state." And he argues that our prior decisions do not foreclose adoption of the doctrine because they neither explicitly consider nor reject it.

¶5   Featherston is correct that no Utah case has expressly discussed the amelioration doctrine by name. But our precedent has addressed the substantive issue underlying the doctrine. And we have consistently held that a defendant may benefit from an ameliorative amendment enacted *before* sentencing, but not from one enacted *after* sentencing—even if the defendant's case is still pending on appeal.

¶6   This precedent does not, by itself, prevent us from considering whether to adopt a common law principle like the amelioration doctrine. But it rests on a statutory foundation that

constrains us from doing so. Utah's general savings statute provides that, "The repeal of a statute does not . . . affect . . . any penalty incurred . . . under . . . the statute repealed." UTAH CODE § 68-3-5. The general effect of this provision is to "save" or preserve penalties that have already been "incurred" when the underlying law is later repealed or amended. And we have interpreted the statute to mean that a defendant incurs the penalty for a crime at sentencing.

¶7   Thus, our longstanding interpretation of the general savings statute places it in tension with the amelioration doctrine. To the extent the doctrine requires resentencing in a criminal case due to an ameliorative amendment enacted while the case is on appeal, it conflicts with the statute. And where a statute conflicts with the common law, the statute governs.

¶8   For this reason, we affirm the district court.

## BACKGROUND

¶9   Featherston pled guilty to aggravated kidnapping based on an unlawful detention and was sentenced to fifteen years to life. He appealed, arguing that the State had breached the plea agreement during sentencing. The State conceded that point, and the court of appeals remanded his case for resentencing. On remand, the district court again sentenced Featherston to fifteen years to life. At the time of his resentencing, aggravated kidnapping was a first-degree felony. *See* UTAH CODE § 76-5-302(3) (2018).

¶10  Featherston then appealed his new sentence. While that appeal was pending, the legislature amended the relevant statute to reduce aggravated kidnapping based on unlawful detention from a first-degree to a third-degree felony. *See id.*; *id.* § 76-5-302(3) (2019).

¶11  Three years later, after the court of appeals had affirmed his sentence, Featherston moved for resentencing under Utah Rule of Criminal Procedure 22(e).[1] He asserted that he qualified for resentencing under the reduced penalty based on the common law doctrine of amelioration. He explained that this doctrine affords a defendant the benefit of a statutory penalty reduction enacted

---

[1] The State has not challenged Featherston's use of Utah Rule of Criminal Procedure 22(e) for this purpose. Accordingly, we express no opinion on whether it was appropriately invoked.

before the defendant's case is final. And he asserted that his case was not final when the amendment occurred because his direct appeal was still pending.

¶12   The district court denied Featherston's motion. It reasoned that Utah appellate precedent forecloses amelioration once a defendant has been sentenced. The court explained that Utah law has "clearly demarcated the date of sentencing as the operative date to foreclose a later reduction in a crime's penalty." In other words, the court concluded that "a sentence is based on the law in effect at the time of sentencing, and any change in the law after that, regardless of whether an appeal is pending or the criminal case has been finalized, is irrelevant."

¶13   Featherston appealed. We exercise jurisdiction under Utah Code section 78A-3-102(4)(a)(v).

## STANDARD OF REVIEW

¶14   We review the grant or denial of a rule 22(e) motion for correctness, giving "no deference to the district court." *State v. Houston*, 2015 UT 40, ¶ 16, 353 P.3d 55. Further, "a lower court's interpretation of binding case law presents a question of law which we review for correctness." *State v. Labrum*, 2025 UT 12, ¶ 17, 568 P.3d 1075 (cleaned up).

## ANALYSIS

¶15   We first address Featherston's primary argument that the common law amelioration doctrine entitles him to resentencing under the amended, lower penalty. Our precedent establishes that because the amendment was enacted after Featherston's sentencing, he cannot be resentenced under the new statute. If our precedent were all that stood in the way, we could consider adopting this common law doctrine. However, our precedent is based on our interpretation of the general savings statute. And because the statute conflicts with the amelioration doctrine, the statute prevails.

¶16 We then turn to Featherston's alternative argument that, to the extent our precedent conflicts with the amelioration doctrine, we should overrule it. But Featherston does not acknowledge the statutory interpretation underlying our precedent, nor does he propose an alternative reading of the statute's operative language. Without that, Featherston has not provided a basis for us to reconsider our precedent on this point.

4

¶17 Accordingly, we affirm Featherston's sentence.

I. UTAH PRECEDENT ALLOWS CRIMINAL DEFENDANTS TO RECEIVE THE BENEFIT OF A STATUTORY PENALTY REDUCTION BEFORE SENTENCING, BUT NOT AFTER, BASED ON OUR INTERPRETATION OF THE GENERAL SAVINGS STATUTE

¶18 The power to define crimes and fix their penalties is the "prerogative of the legislature." *State v. Tapp*, 490 P.2d 334, 336 (Utah 1971). At the time Featherston was resentenced, the legislature had classified aggravated kidnapping based on unlawful detention as a first-degree felony. UTAH CODE § 76-5-302(3) (2018). After his resentencing, but before his appeal was final, the legislature amended section 76-5-302 to reduce this form of aggravated kidnapping to a third-degree felony. *See* Aggravated Kidnapping Amendments, ch. 106 § 1, 2019 Utah Laws 565.

¶19 Featherston argues that under these circumstances, we should apply the common law doctrine of amelioration and allow him the benefit of that reduction. *Black's Law Dictionary* defines the amelioration doctrine as the "rule that if a new statute reduces the penalty for a certain crime while a prosecution for that crime is pending, the defendant should gain the benefit of the reduction even though the crime was committed before the statute passed." *Amelioration Doctrine*, BLACK'S LAW DICTIONARY (12th ed. 2024). And generally, a criminal proceeding is not considered final until any direct appeal has concluded. *See Beard v. Banks*, 542 U.S. 406, 411 (2004) (explaining that "ordinarily . . . state convictions are final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied" (cleaned up)); *State v. Guard*, 2015 UT 96, ¶ 30 n.27, 371 P.3d 1 (quoting *Beard*, 542 U.S. at 411).

¶20 We apply the common law "so far as it is not repugnant to, or in conflict with . . . laws of this state." UTAH CODE § 68-3-1. The question, then, is whether the amelioration doctrine conflicts with Utah law.

¶21 We conclude that it does. For more than five decades, this court has held that ameliorative sentencing amendments apply only if enacted before sentencing. And that rule rests on our

interpretation of a statute—specifically, Utah's general savings statute. *Id.* § 68-3-5.[2]

¶22 The general savings statute states: "The repeal[3] of a statute does not revive a statute previously repealed, or affect any right which has accrued, any duty imposed, any penalty incurred, or any action or proceeding commenced under or by virtue of the statute repealed." *Id.* Relevant here is the statute's instruction that, "The repeal of a statute does not . . . affect . . . any *penalty incurred* . . . under . . . the statute repealed." *Id.* (emphasis added).

¶23 The statute does not define the phrase "penalty incurred." In general, "penalty" is defined as "[p]unishment imposed on a wrongdoer, usu[ally] in the form of imprisonment or fine." *Penalty*, BLACK'S LAW DICTIONARY (12th ed. 2024). And "incur" means "to

---

[2] Utah's general savings statute has remained essentially the same since it was adopted in 1898, just after statehood. At that time, it provided: "The repeal of a statute does not revive a statute previously repealed, nor affect any right which has accrued, any duty imposed, any penalty incurred, nor any action or proceeding commenced under or by virtue of the statute repealed." UTAH REV. STAT. § 2492 (1898). This statute was recodified in 1907 and 1917 without any changes to its language. *See* UTAH COMP. LAWS § 2492 (1907); *id.* § 5842 (1917). In 1933, the legislature recodified the statute with a minor revision, replacing the word "nor" with "or." *See* UTAH REV. STAT. § 88-2-5 (1933) ("The repeal of a statute does not revive a statute previously repealed, or affect any right which has accrued, any duty imposed, any penalty incurred, or any action or proceeding commenced under or by virtue of the statute repealed."). Subsequent amendments have recodified the statute but have made no changes to its language. *Compare id.*, *with* UTAH CODE § 88-2-5 (1943), *and id.* § 68-3-5 (1953).

[3] While the statute refers only to the "repeal" of a statute, it also applies to amendments that effectively eliminate the statutory foundation of a pending prosecution or incurred penalty. *See State v. Cooke*, 2025 UT 6, ¶¶ 11–12, 26, 567 P.3d 541 (applying Utah's general savings statute where the statutory basis of an ongoing prosecution was repealed and replaced in modified form); *People v. Shultz*, 460 N.W.2d 505, 527 n.12 (Mich. 1990) (explaining that in Michigan's similarly worded general savings statute, "[t]he term 'repeal' also includes the reenactment of the same statute with modification").

become liable or subject to." *Incur*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/incur (last visited Apr. 28, 2026).

¶24  We have interpreted "penalty incurred" to refer to the time of sentencing.[4] In a trilogy of cases—beginning with *State v. Miller*, 464 P.2d 844 (Utah 1970), followed by *Belt v. Turner*, 483 P.2d 425 (Utah 1971), and then *State v. Tapp*, 490 P.2d 334 (Utah 1971)—we have held that the general savings statute allows sentencing under an ameliorative amendment enacted up to but not after sentencing.

¶25  In *State v. Miller*, the defendant was convicted and sentenced for check fraud, then classified as a felony. 464 P.2d at 844, 846. While his appeal was pending, the legislature reduced the penalty to a maximum of six months in jail. *Id.* at 846. He sought resentencing under the amended statute, but this court concluded that "the saving clause . . . preserved the former punishment" and barred relief. *Id. Miller* thus established the rule that when a criminal penalty is reduced *after* a defendant has been convicted and sentenced, but while the case is still pending on appeal, the general savings statute prohibits resentencing under the new law. *Id.*

¶26  The following year, in *Belt v. Turner*, we considered the case of a defendant who had been convicted but not yet sentenced when the legislature reduced the applicable penalty. 483 P.2d at 425. On rehearing in that case, we relied on our reasoning in *Miller* and explained that the defendant was entitled to be sentenced under the new law. *Id.* at 425–26.

¶27  Then, in *State v. Tapp*, we addressed the meaning of the savings statute's phrase "penalty incurred," holding that it refers to the moment of sentencing. 490 P.2d at 335–36. There, although the legislature had reduced the applicable penalty before sentencing, the trial court still imposed the harsher, superseded penalty. *Id.* at 335. We reversed, explaining that where a statute

---

[4] The State contends that our interpretation of the phrase "penalty incurred" in the general savings statute is incorrect. It argues that a penalty is incurred at the time the offense is committed, rather than at sentencing. We need not address that argument today. Under either interpretation—whether the penalty is incurred at the commission of the offense or at sentencing—the result is the same here: neither reading advances Featherston's claim.

reducing the penalty takes effect before sentencing, the defendant is entitled to the benefit of the lesser punishment because "no penalty is incurred until the defendant is convicted, judgment entered and sentence imposed." *Id.* at 335–36.

¶28 In the more than fifty years that have passed since this court decided *Miller*, the legislature has not amended the general savings statute to alter or reject our conclusion that a criminal penalty is incurred at the time of sentencing. We consider such legislative acquiescence to support our interpretation. *See Rutherford v. Talisker Canyons Fin., Co.*, 2019 UT 27, ¶¶ 63–66, 445 P.3d 474.

¶29 Thus, under our precedent, the general savings statute permits amelioration only until a defendant's penalty is incurred at sentencing. The amelioration doctrine, however, would extend relief beyond sentencing and through the pendency of a direct appeal. These approaches cannot be reconciled. Accordingly, the general savings statute precludes adoption of the amelioration doctrine to the extent they conflict. *See* UTAH CODE § 68-3-1.

¶30 Featherston argues, however, that our precedent does not control because our cases do not refer to "amelioration" by name. But that does not matter where, as here, our precedent directly answers the substance of the question presented, and it is grounded on a statute. Indeed, the circumstances in *Miller* are materially indistinguishable from those before us today. There, the defendant—like Featherston—was sentenced under a harsher law and later claimed entitlement to the benefit of a subsequent legislative reduction made during the pendency of his appeal. *Miller*, 464 P.2d at 845–46. We rejected that argument for the same reason we reject Featherston's: the general savings statute controls, and the penalty incurred is not "affected" by the ameliorative amendment. *Id.* at 846; *see Tapp*, 490 P.2d at 335–36.

¶31 Accordingly, we conclude that the general savings statute and our precedent interpreting and relying upon it foreclose Featherston's appeal to the amelioration doctrine.[5]

---

[5] Featherston also contends that the rule of lenity requires us to rule in his favor. We disagree. The rule of lenity applies when a criminal statute is ambiguous, directing courts to resolve the ambiguity in favor of the defendant. *State v. Rasabout*, 2015 UT 72,

(continued . . .)

II. WE DECLINE TO OVERRULE OUR INTERPRETATION OF THE GENERAL
    SAVINGS STATUTE

¶32   Featherston argues in the alternative that, if our precedent conflicts with the amelioration doctrine, we should overturn our precedent. But, as explained above, the precedent at issue is based on our interpretation of the general savings statute. Yet Featherston neither engages with our interpretation nor proposes an alternative reading of that statute that would extend amelioration through the end of the direct appeal process.

¶33   When considering whether to overrule our precedent, we consider two factors: (1) the strength of the reasoning on which the original precedent rests, and (2) the relative entrenchment of the precedent in our law. *See Eldridge v. Johndrow*, 2015 UT 21, ¶ 22, 345 P.3d 553. We conclude that both factors weigh against overruling our precedent here.

A. *The Persuasiveness of the Existing Authority*

¶34 The first consideration is the persuasiveness of the authority and reasoning on which it rests. *Id.* ¶ 24.

¶35 We begin with the trio of cases discussed above: *Miller*, *Belt*, and *Tapp*. Read together, they establish that an ameliorative amendment applies if it is enacted before sentencing, but not afterward. *See supra* ¶¶ 24–28. That conclusion is grounded in our interpretation of the general savings statute, particularly the meaning of the phrase "penalty incurred." *See supra* ¶¶ 25, 27–28.

¶36   Featherston does not contest that interpretation. He offers no competing reading of "penalty incurred" and does not grapple with the statutory text. Without such engagement, he does not provide a basis to question the reasoning underlying these decisions.

¶37   Thus, Featherston has not shown that this factor supports overturning our precedent.

B. *The Relative Entrenchment of the Precedent in Our Law*

¶38 We then consider the relative entrenchment of the precedent in our law. This is a composite of considerations, including the precedent's age, workability, consistency with other

---

¶ 22, 356 P.3d 1258. But Featherston has identified no statutory ambiguity at play in this appeal.

legal principles, and the extent to which overturning the precedent would create hardship or injustice. *Eldridge*, 2015 UT 21, ¶ 22.

¶39 For over fifty years, our precedent has provided a consistent framework for determining whether an amendment reducing a penalty applies in a criminal case. Although appellate cases involving post-sentencing amendments are relatively rare, cases involving pre-sentencing amendments are far more common. And courts have applied the same interpretive framework to both. *See, e.g.*, *State v. Saxton*, 519 P.2d 1340, 1342 (Utah 1974) (applying *Tapp* to hold "that if the penalty for an offense is reduced prior to the imposition of sentence, the defendant is entitled to the benefit of the lesser punishment"); *State v. Atkinson*, 532 P.2d 215, 216 (Utah 1975) (applying *Tapp* to determine whether the defendant was "entitled to the benefit of the lesser penalty" provided by a newly enacted penal code prior to sentencing); *Robbins v. Cook*, 734 P.2d 415, 416 (Utah 1986) (explaining that the defendant sought resentencing under *Tapp*, asserting a right "to the lesser penalty provided by the statute at the time of sentencing"); *State v. Losee*, 2012 UT App 213, ¶ 38, 283 P.3d 1055 (applying *Belt* to determine that a defendant is sentenced under the law in effect at sentencing, even when a penalty was briefly reduced and then restored before sentencing).

¶40 Accordingly, this factor supports maintaining our precedent.

¶41 And as both factors weigh against overruling our precedent, we decline to do so.

## CONCLUSION

¶42 Under Utah law, the general savings statute and our precedent interpreting it provide that a criminal penalty is incurred at sentencing and is preserved regardless of later ameliorative amendments. Thus, our general savings statute conflicts with the amelioration doctrine. Because Featherston was sentenced before the amendment reducing the aggravated kidnapping penalty took effect, he is not eligible for resentencing. We therefore affirm his sentence.

---