*This opinion is subject to revision before final publication in the Pacific Reporter*

**2025 UT 6**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee,*

*v.*

MONTE K. COOKE,
*Appellant.*

No. 20230419
Heard December 9, 2024
Filed March 20, 2025

On Appeal of Interlocutory Order

Fourth District Court, Provo
The Honorable Kraig Powell
No. 171400242

Attorneys:

Derek E. Brown, Att'y Gen., Daniel W. Boyer, Asst. Solic. Gen., Salt Lake City, for appellee

Jennifer L. Foresta, Dustin Parmley, Provo, for appellant

JUSTICE POHLMAN authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE PEARCE, JUSTICE PETERSEN, and JUSTICE HAGEN joined.

JUSTICE POHLMAN, opinion of the Court:

## INTRODUCTION

¶1    In 2016, Monte Cooke was involved in a traffic collision that killed one person and seriously injured another. Cooke was charged with two second-degree felony counts of negligently driving with a measurable amount of a controlled substance in the body and causing death or serious bodily injury. But shortly before his trial was set to begin, the Utah Legislature repealed and replaced the statute under which Cooke had been charged.

¶2    Cooke filed a motion to dismiss the charges against him, arguing that he could not be prosecuted under a statute that had been repealed. The district court ultimately denied Cooke's motion, ruling that the State could proceed under the original statute. The court concluded that Utah's general saving statute, Utah Code section 68-3-5, protects from abatement criminal prosecutions initiated before a statute's repeal.

¶3    The Utah Court of Appeals granted Cooke's petition to appeal the district court's interlocutory order and then certified the matter to this court. We are now tasked with deciding whether Utah's general saving statute permits a prosecution to proceed unabated when the statutory basis for the charge is repealed before trial. We hold that it does, because the plain language of the saving statute says as much: it states that a statute's repeal does not affect actions already commenced under that statute, and that includes criminal actions. We also hold that our decisions in *Belt v. Turner*, 479 P.2d 791 (Utah), *aff'd on reh'g*, 483 P.2d 425 (Utah 1971), and its progeny do not preclude this result.

¶4    Accordingly, we affirm the district court's decision ordering Cooke to stand trial on the charges brought under the since-repealed statute and remand for further proceedings.

## BACKGROUND[1]

¶5    In 2016, Monte Cooke was driving a semitruck southbound on I-15 in Utah County. While driving in the right-hand lane, the semitruck drifted to the right side of the road and struck the guardrail. Cooke then lost control of the semitruck, and it came to a stop diagonally across all lanes of travel.

¶6    A pickup truck traveling southbound was unable to brake quickly enough to avoid impact and collided with the side of the semitruck. The passenger in the pickup truck was killed on impact, and the driver sustained several serious injuries to his back, shoulder, and head.

¶7    After the collision, officers investigated its cause. Data from the semitruck's onboard computer showed that the semitruck deescalated from 70 mph seconds before the crash to 0 mph one

---

[1] Like the parties, we draw the background facts from the amended information and the preliminary hearing transcript. At this stage of the proceeding, these facts have not been proved.

second afterward, and that Cooke did not apply the brakes or engage the clutch system at any point.

¶8 Officers at the scene did not find the logbook to Cooke's semitruck. But by examining the logbook for a companion semitruck, officers concluded that Cooke had been on duty for too many hours without adequate rest, in violation of federal law. And when Cooke submitted to a routine blood draw, he tested positive for methamphetamine. Based on their investigation into the cause of the collision, officers theorized that Cooke fell asleep and lost control of the semitruck.

¶9 Cooke was subsequently charged with two second-degree felony counts of negligently driving with a measurable amount of a controlled substance in his body and causing death or serious bodily injury to another, in violation of Utah Code section 58-37-8(2)(g) (2016). Under the 2016 version of the statute, a defendant is guilty of a second-degree felony if the defendant (1) "knowingly and intentionally" has "any measurable amount of a controlled substance" in the defendant's body and (2) "operates a motor vehicle . . . in a negligent manner," (3) "causing serious bodily injury . . . or the death of another." UTAH CODE § 58-37-8(2)(g), (h)(i) (2016).

¶10 In 2019, Cooke was bound over on both counts. Over the next three years, the district court set numerous trial dates and granted several continuances. Most recently, Cooke's seven-day jury trial was scheduled to begin in June 2022.

¶11 Shortly before trial, the legislature repealed and replaced the statute under which Cooke was charged, Utah Code section 58-37-8(2)(g) (the repealed statute). *See* Driving Offenses Amendments, H.B. 29, 2022 Leg., Gen. Sess. (Utah 2022) (available at https://le.utah.gov/~2022/bills/static/HB0029.html). The legislature removed the offense relating to the negligent operation of a vehicle from the Utah Controlled Substances Act in Utah Code, Title 58, Chapter 37, and housed it in the Utah Criminal Code's offenses against the individual in Title 76, Chapter 5.

¶12 Under the new articulation, the legislature separated the previous offense into two distinct offenses: a second-degree felony for automobile homicide, UTAH CODE § 76-5-207(2)–(3) (2025), and a third-degree felony for negligently operating a vehicle resulting

in serious bodily injury to another, *id.* § 76-5-102.1(2)–(3).[2] The legislature also modified the elements. In the revised articulation, the legislature increased the mental state requirement for operating a motor vehicle from simple negligence to criminal negligence, but it removed the "knowing[] or intentional[]" mental state requirement for having a controlled substance in one's body. *See* H.B. 29.[3] So, under section 76-5-207, a person now commits automobile homicide if the person "operates a vehicle in a criminally negligent manner causing death to another; and . . . has in the actor's body any measurable amount of a controlled substance." UTAH CODE § 76-5-207(2)(b). Similarly, under section 76-5-102.1, a person now commits the offense of negligently operating a vehicle resulting in serious bodily injury if the person "operates a vehicle in a criminally negligent manner causing bodily injury to another; and . . . has in the actor's body any measurable amount of a controlled substance." *Id.* § 76-5-102.1(2)(b), (3)(iv).

¶13 Two days before trial, Cooke moved to dismiss the charges against him on the basis that the statute under which he was charged had been repealed. He asserted that dismissal was required because he could not be properly tried for an offense that no longer exists. The district court agreed with Cooke and granted his motion. But it also granted the State's request for leave to amend the information to charge Cooke under the newly adopted statutes.

¶14 In an amended information, the State charged Cooke with one count of automobile homicide, a second-degree felony, in violation of subsection 76-5-207(2)(b), and one count of driving with a controlled substance and causing serious bodily injury to another, a third-degree felony, in violation of subsection 76-5-102.1(2)(b). Cooke again moved to dismiss, this time on the basis that the charges violate our constitutional prohibitions against ex

---

[2] Sections 76-5-207 and 76-5-102.1 have been amended since 2022. Because the recent amendments involved no changes material to our decision, we cite the current version of the statutes.

[3] With the 2022 legislative changes, a defendant who operates a motor vehicle with simple negligence and causes death or serious bodily injury to another may still be found guilty under the statutes if the defendant was under the influence of a drug "to a degree that renders the actor incapable of safely operating a vehicle." UTAH CODE §§ 76-5-207(2)(a), -102.1(2)(a).

post facto laws.[4] In opposition, the State argued that the district court erred in ruling that the State was barred from prosecuting Cooke under the repealed statute, arguing that Utah's general saving statute, Utah Code section 68-3-5, "plainly states that repeals do not apply to pending matters."

¶15 The district court did not immediately rule on Cooke's second motion to dismiss; it instead ordered supplemental briefing on the question of whether the saving statute allows the State to proceed with its prosecution of Cooke under the repealed statute. In response, Cooke argued that the general saving statute does not apply to criminal prosecutions, and that this court's decisions in *Belt v. Turner*, 479 P.2d 791 (Utah), *aff'd on reh'g*, 483 P.2d 425 (Utah 1971), and its progeny require the dismissal of a pending criminal prosecution once the underlying criminal statute has been repealed.

¶16 The district court reconsidered its prior ruling dismissing the case and ordered Cooke to stand trial on the charges brought against him under the repealed statute. It rejected Cooke's arguments and reasoned that the general saving statute was "enacted for the express purpose of continuing in force proceedings that are founded on a repealed statute if those proceedings were commenced prior to the repeal." So "despite the 2022 repeal of the offenses described in the 2016 version of Section 58-37-8(2)(g)," the court held that Cooke "may nevertheless be charged with and prosecuted for those alleged offenses because, at the time of the repeal, he was the subject of an 'action or proceeding commenced under or by virtue of the statute repealed.'" (Quoting UTAH CODE § 68-3-5.)

---

[4] Article I, section 18 of the Utah Constitution and article I, section 10 of the United States Constitution both prohibit ex post facto laws. UTAH CONST. art. I, § 18 ("No . . . ex post facto law . . . shall be passed."); U.S. CONST. art. I, § 10, cl. 1 ("No State shall . . . pass any . . . ex post facto Law . . . ."). An ex post facto law is one that "punishes as a crime an act previously committed, which was innocent when done[,] which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with a crime of any defense available according to law at the time when the act was committed." *Monson v. Carver*, 928 P.2d 1017, 1026 (Utah 1996) (plurality opinion) (cleaned up).

¶17 The district court also distinguished this court's precedent in *Belt* and *State v. Tapp*, 490 P.2d 334 (Utah 1971), two cases that explored the application of the saving statute in situations when the legislature passed an ameliorative sentencing statute before the defendant was sentenced. The district court explained that these cases "addressed the proper sentence to be imposed, not the actual prosecution and trial of the alleged crime." Because "[t]he penalty for any of [Cooke's] alleged crimes [was] not the question facing the Court," it concluded that *Belt* and *Tapp*'s analysis of the general saving statute was inapposite.

¶18 Cooke sought interlocutory review of the district court's order, which the court of appeals granted. The court of appeals then certified the matter to this court. *See* UTAH CODE § 78A-4-103(4).

## ISSUE AND STANDARD OF REVIEW

¶19 The sole issue in this case is whether the district court erred in interpreting Utah's general saving statute to permit Cooke's prosecution to proceed after the statute under which he was charged was repealed and replaced before trial. This issue requires us to interpret the saving statute and our caselaw applying it. A district court's interpretation of a statute and our caselaw presents questions of law that we review for correctness. *Ellis v. Estate of Ellis*, 2007 UT 77, ¶ 6, 169 P.3d 441.

## ANALYSIS

¶20 Cooke disagrees with the district court's construction of the general saving statute. He first argues that by its plain language, the statute does not apply to pending criminal prosecutions for conduct that has been decriminalized and that, therefore, the common law doctrine of abatement requires dismissal of the charges against him. Cooke next contends that even if the plain language of the general saving statute suggests otherwise, this court's holdings in *Belt v. Turner*, 479 P.2d 791 (Utah), *aff'd on reh'g*, 483 P.2d 425 (Utah 1971), and its progeny require courts to apply any ameliorative statutory changes that take effect prior to sentencing. This means, according to Cooke, that because the statutory basis for his criminal charges was repealed, the charges against him must be dismissed.

¶21 We address both of Cooke's arguments in turn and conclude that the district court correctly interpreted both the general saving statute and our precedent to conclude that Cooke may be tried under the repealed statute.

I. UTAH'S GENERAL SAVING STATUTE PERMITS COOKE'S
PROSECUTION UNDER THE REPEALED STATUTE TO PROCEED
UNABATED

¶22 The statute we are called on to interpret in this case, Utah Code section 68-3-5, is at times referred to as Utah's general saving statute. *See, e.g., Buttrey v. Guaranteed Sec. Co.*, 300 P. 1040, 1045 (Utah 1931) (applying the version of Utah's general saving statute codified as section 5842, Compiled Laws of Utah 1917).[5] It provides: "The repeal of a statute does not revive a statute previously repealed, or affect any right which has accrued, any duty imposed, any penalty incurred, or any action or proceeding commenced under or by virtue of the statute repealed." UTAH CODE § 68-3-5.

¶23 Historically, under the common law doctrine of abatement, repeals and amendments of criminal statutes were applied retroactively, "abating every prosecution which had not yet resulted in final conviction . . . unless a special provision had been enacted to save prosecutions under the repealed statute." *Holiday v. United States*, 683 A.2d 61, 66 (D.C. 1996). The doctrine of abatement caused all pending criminal prosecutions to cease "whether the legislation was an outright repeal or merely an amendment or reenactment of the substantive crime, since any such revision effectively repealed the statute underlying the prosecution." *Id.*

---

[5] Section 68-3-5 traces its inception to a statute first adopted in 1898, which provided: "The repeal of a statute does not revive a statute previously repealed, nor affect any right which has accrued, any duty imposed, any penalty incurred, nor any action or proceeding commenced under or by virtue of the statute repealed." *See* UTAH REV. STAT. § 2492 (1898). This statute was recodified in 1907 and 1917 without any changes to its language. *See* UTAH COMP. LAWS § 2492 (1907); *id.* § 5842 (1917). In 1933, the legislature recodified the statute with a minor revision, replacing the word "nor" with "or." *See* UTAH REV. STAT. § 88-2-5 (1933) ("The repeal of a statute does not revive a statute previously repealed, or affect any right which has accrued, any duty imposed, any penalty incurred, or any action or proceeding commenced under or by virtue of the statute repealed."). Subsequent amendments have recodified the statute but have made no changes to its language. *Compare id. with* UTAH CODE § 88-2-5 (1943) and *id.* § 68-3-5 (1953).

¶24 To prevent such results, state legislatures often included specific saving clauses in new legislation "stating that prosecutions of offenses under the repealed statute were not to be abated." *Bradley v. United States*, 410 U.S. 605, 608 (1973). Then, to avoid the abatement of prosecutions in the absence of a specific saving clause, legislatures began adopting general saving statutes applicable "to all repeals, amendments, and reenactments of criminal and civil liabilities," which had the effect of "shift[ing] the legislative presumption from one of abatement unless otherwise specified to one of non-abatement in the absence of contrary legislative direction." *Holiday*, 683 A.2d at 66–67 (cleaned up); *see also State v. Bischoff*, 258 A.3d 14, 22 (Conn. 2021) (general saving statutes "were enacted to counter the effect of the common-law abatement doctrine" (cleaned up)).

¶25 Courts in states where legislatures have adopted general saving statutes recognize that the statutes reflect "a strong legislative intent that the law in effect at the time of the commission of a crime governs the prosecution of criminal offenses." *See, e.g.*, *State v. Second Jud. Dist. Ct. ex rel. Cnty. of Washoe*, 188 P.3d 1079, 1081 (Nev. 2008) (en banc) (per curiam). Consequently, these courts apply general saving statutes to "save pending or future prosecutions of crimes committed under a repealed or amended statute from being abated" unless "the legislature has unambiguously expressed an intent contrary to the statutory 'default' position" of non-abatement. *See, e.g.*, *State v. Carpentino*, 85 A.3d 906, 910–11 (N.H. 2014) (cleaned up); *see also United States v. Dixon*, 648 F.3d 195, 199–200 (3d Cir. 2011) (explaining that the federal general saving statute prevents the repeal of a criminal statute from abating pending criminal prosecutions, unless the repealing act provides for abatement "by express declaration or necessary implication" (cleaned up)).

¶26 Utah's general saving statute appears to follow this model. It states, in relevant part, that "[t]he repeal of a statute does not . . . affect . . . any action or proceeding commenced under or by virtue of the statute repealed." UTAH CODE § 68-3-5. Thus, by its terms, the statute makes plain that the repeal of a statute has no effect on an action or proceeding already begun. And, as applied here, that means the legislature's 2022 repeal of the statute under which Cooke was charged has no effect on his pending prosecution. In other words, the statute saves Cooke's prosecution from abatement.

¶27 Still, Cooke resists this conclusion, arguing that the general saving statute does not apply to criminal actions. He acknowledges that the statute has been applied to save a private right of action after a legislative repeal of a civil statute. *See Buttrey*, 300 P. at 1045 (concluding that the general saving statute saved plaintiff's civil claim for damages arising out of a repealed statute); *Indus. Comm'n v. Agee*, 189 P. 414, 416 (Utah 1920) (relying on the general saving statute to conclude legislature intended that claimants could continue to prosecute their rights under a statute that was repealed while their cases were pending). But because words like "prosecution" and "criminal" do not appear in the general saving statute, Cooke argues that the legislature did not intend for it to save all criminal prosecutions from abatement.[6]

¶28 We disagree. In interpreting statutes, our goal "is to ascertain the intent of the legislature, the best evidence of which is the plain language of the statute itself." *State v. Miller*, 2023 UT 3, ¶ 65, 527 P.3d 1087 (cleaned up). And here, the terms the legislature chose evince an intent that the general saving statute apply to civil and criminal actions alike.

¶29 To begin, the terms "action" and "proceeding" are naturally broad. That was true in 1898, when the statute was first enacted. And it's still true today. The first edition of Black's Law Dictionary, published in 1891, defined "action" as "an ordinary proceeding in a court of justice by which one party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." *Action*, BLACK'S LAW DICTIONARY (1st ed. 1891). The definition expressly included both civil and criminal proceedings. *Id.* The same edition defined "proceeding" as "regular and orderly progress in form of law; including all possible steps in an action from its commencement to the execution of judgment," or "[i]n a more particular sense, any application to a court of justice, however

---

[6] Cooke concedes that the statute "could act to save" some, but not all, criminal prosecutions from abatement. For example, those where the legislature recodifies the same criminal statute "word-for-word" in a different part of the code, or where the legislature "expand[s] the reach of the offense" or increases the associated penalties. But Cooke's argument appears to be based in a policy choice; he does not explain how the language of the general saving statute supports the distinction he draws.

made, for aid in the enforcement of rights, . . . or for any remedial object." *Proceeding*, BLACK'S LAW DICTIONARY (1st ed. 1891).

¶30 The current edition of Black's Law Dictionary maintains similar definitions for the two terms. It defines an "action" as "[a] civil or criminal judicial proceeding," *Action*, BLACK'S LAW DICTIONARY (12th ed. 2024), and a "proceeding" as "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment" or "[a]ny procedural means for seeking redress from a tribunal or agency," *Proceeding*, BLACK'S LAW DICTIONARY (12th ed. 2024).

¶31 Because both the historical and present-day meanings of "action" and "proceeding" encompass both civil lawsuits and criminal prosecutions, we read Utah's general saving statute to apply to actions arising under both civil and criminal law. The fact that the statute does not include words like "prosecution" or "criminal" does not change that result. The statute refers to actions and proceedings without any qualification. That shows a clear legislative intent that the statute apply to *all* actions and proceedings, no matter the type.

¶32 And, under Utah law, a criminal action is usually "commenced" by filing a criminal information. *See* UTAH R. CRIM. P. 4(a); *State v. Christiansen*, 2015 UT 74, ¶¶ 1, 25, 365 P.3d 1189. Thus, by its plain meaning, the saving statute allows criminal actions to proceed unabated if a criminal information was filed before the repeal of the statute underlying the charges, unless the legislature indicates otherwise. UTAH CODE § 68-3-5.

¶33 Here, when the legislature repealed and replaced the original 2016 statute with amended statutes, it made no indication that the 2022 repeal and amendment should abate pending prosecutions under the original statute. Because the State commenced its prosecution against Cooke by filing an information against him prior to the repeal of section 58-37-8(2)(g), the saving statute applies by its plain terms and protects the prosecution from abatement.

II. THIS COURT'S PRECEDENT DOES NOT REQUIRE DISMISSAL OF CRIMINAL CHARGES WHEN THE STATUTE UNDERLYING THE CHARGES IS REPEALED

¶34 Cooke next argues that this court's decisions in *Belt v. Turner*, 479 P.2d 791 (Utah), *aff'd on reh'g*, 483 P.2d 425 (Utah 1971), and its progeny require dismissal of the pending criminal charges

against him. He contends that despite what the saving statute says, our precedent requires that we retroactively apply any statutory changes that may benefit a defendant who has not yet been sentenced. So, in situations where the elements of a criminal offense are modified prior to sentencing in a way that could benefit the defendant, as is the case here, Cooke argues that our caselaw compels the dismissal of the pending charges brought under the original statute.

¶35 But our caselaw does not demand this result. On the contrary, our holdings in *Belt* and its progeny are narrow, confined to circumstances in which the legislature enacts an ameliorative *sentencing* amendment to a law after a charge has been filed but before sentencing. In these limited circumstances, we have held that courts should apply the ameliorative sentencing amendment at the time of sentencing. *See Belt*, 479 P.2d at 792–93; *see also Smith v. Cook*, 803 P.2d 788, 792 (Utah 1990) (stating *Belt*'s rule "is applicable only to situations in which [an] amendment that lessens the criminal penalty becomes effective prior to the time a criminal defendant is sentenced").

¶36 Specifically, in *Belt*, a criminal defendant pleaded guilty to the charge of issuing a fraudulent check. 479 P.2d at 792. Initially, the trial court placed Belt on probation without imposing a sentence. *Id.* But when Belt violated his probation, he was brought back before the court to be sentenced. *Id.* At the time the charge against Belt was filed, the offense of issuing a fraudulent check carried a penalty of imprisonment in county jail for up to one year or in state prison for up to five years. *Id.* But before Belt returned to the court for sentencing, the legislature had amended the statute to reduce the penalty to a fine or imprisonment in the county jail for up to six months. *Id.* The trial court sentenced Belt to a term of up to five years at the state prison, consistent with the sentencing scheme that had since been repealed. *Id.*

¶37 In a split decision, this court vacated the sentence, holding that Belt was entitled to the benefit of the ameliorative sentencing amendment. *Id* at 792–93. The court reasoned that the saving statute, which provides that a statute's repeal "does not . . . affect . . . any penalty incurred," did not apply because "no penalty was

incurred until [Belt's] sentence was pronounced."[7] *Id.* at 793 (cleaned up). Thus, the court concluded that sentencing courts must give defendants the benefit of a reduced penalty when the statute is amended before sentencing. *Id.* at 792–93.

¶38 Similarly, that same year, a split court again affirmed that the saving statute does not apply to ameliorative sentencing amendments adopted before a defendant is sentenced. *State v. Tapp*, 490 P.2d 334, 335–36 (Utah 1971). The court reiterated that because a penalty is not "incurred" until sentencing, if the legislature passes an ameliorative sentencing amendment before sentencing, the "defendant is entitled to the lesser penalty." *Id.* at 336. Applying this rule, the court allowed a defendant convicted of possessing marijuana to benefit from an amendment reducing the penalty for his offense when that amendment became effective before his sentencing. *Id.* at 335–36.

¶39 Cooke argues that regardless of how we may now interpret the plain language of the saving statute, this line of cases controls and requires the dismissal of the charges against him. But Cooke's case differs materially from *Belt* and *Tapp*. As explained, the court in those cases was tasked with deciding whether the general saving statute applies to ameliorative sentencing amendments. And to resolve that question, we interpreted the part of the general saving statute that uniquely applies to penalties. But we did not address the question now before us: whether the repeal of a statute effectively terminates prosecutions that were commenced before the statute's repeal. Thus, *Belt* and its progeny

---

[7] The *Belt* court suggested in dicta that it was "doubtful whether the general language of [the saving statute] was intended to apply to criminal statutes" at all. 479 P.2d at 793. But this court implicitly disavowed these musings when it applied the general saving statute to conclude that "any amendment to [a criminal] statute that becomes effective after a sentence has been imposed has no effect on that sentence." *Smith*, 803 P.2d at 793. But to the extent the doubt expressed in *Belt* survived *Smith*, we expressly disavow it today. *See State v. Hummel*, 2017 UT 19, ¶ 38, 393 P.3d 314 (explaining that this court retains flexibility to repudiate "points of law reflected only in the broad dicta of our prior decisions").

do not control.[8] Rather, the plain language of the general saving statute dictates our result. And, as we've shown, *see supra* ¶¶ 26–33, the language of the statute clearly reflects a legislative intent to permit such prosecutions to continue unabated.[9]

¶40 Further, contrary to Cooke's suggestion, this is not an unusual result. Courts in other jurisdictions have addressed this issue and reached the conclusion that ameliorative sentencing amendments are viewed differently from the repeal or amendment of a criminal offense. For example, in *People v. Oliver*, 134 N.E.2d 197 (N.Y. 1956), the authority relied upon by this court in *Belt*, New York's highest court drew a clear distinction between ameliorative sentencing amendments and the repeal of a criminal offense statute. The court explained that an amendment that falls "within the category of legislation reducing penalties for criminal activity" is "[o]bviously . . . quite different from a change in law abolishing

---

[8] The State has invited us to overrule *Belt* and its progeny, arguing that this precedent "grew out of a profound misreading of Utah's saving statute." Because we conclude that our holding in *Belt* is limited to ameliorative sentencing amendments and does not control in the present case, *see supra* ¶¶ 34–39, we need not consider whether *Belt* and its progeny should be overruled. Yet our decision declining to address that question in this case should not be read as an endorsement of the reasoning in *Belt*.

[9] Cooke also contends that even if *Belt* alone does not require dismissal of the charges against him, *Belt*'s holding in combination with the rule of lenity will require application of ameliorative statutory changes if he is convicted. Cooke argues that no sentence could legally be imposed and it would be absurd to convict him if he can't be sentenced. These arguments are underdeveloped. Among other things, it is far from clear that Cooke cannot be sentenced under the original statute if he's convicted in this case. It is also not apparent from Cooke's argument how the rule of lenity—a rule of statutory construction applicable to ambiguous penal statutes—applies here. *See State v. Badikyan*, 2020 UT 3, ¶ 33 n.48, 459 P.3d 967 (explaining that "the rule of lenity applies only to the construction of ambiguous *penal* laws"). But we do not resolve these questions now. Whether Cooke, who has yet to be tried, would be entitled to any ameliorative sentencing benefits under the revised articulation is a separate matter not currently before us.

a crime, or altering its definition, where the State may prefer to retain the right to prosecute for the act previously committed in deliberate defiance of the law as it then existed." *Id.* at 202 & n.3; *see also State v. Carpentino,* 85 A.3d 906, 915 (N.H. 2014) (explaining that the line of cases holding that ameliorative sentencing statutes should be applied retroactively applies to amendments that "reduce the penalty for a pre-existing crime," but not to amendments that "effectively eliminate[]" a crime).

¶41 So too here. The Utah Legislature has, through the saving statute, expressed its general view that a defendant can be convicted for conduct that was criminal when charged—even if the legislature subsequently amends the relevant statute. If the legislature had expressed an intent contrary to the default position it established under the general saving statute, we would give effect to that intent. But where it has manifested no intent to remove the conduct at issue from the reach of the general saving statute, we apply the statute as written.

¶42 Lastly, Cooke argues that "[w]hen a legislative act completely decriminalizes what was once criminal, any existing prosecution should be terminated, regardless of the existence of a saving clause." Cooke's argument invites us to disregard the general saving statute—something we cannot do. But we also reject the premise of his argument—that the legislature "completely decriminalize[d] what was once criminal." By reenacting a modified version of the repealed statute, the legislature did not manifest an intent to completely decriminalize the act of negligently causing death or serious bodily injury while driving with methamphetamine in one's system. To be sure, the legislature modified the elements of the relevant crimes. But the legislature's action does not suggest that it viewed Cooke's conduct as unworthy of criminal accountability.

## CONCLUSION

¶43 We hold that the district court correctly determined that the prosecution of Cooke may continue unabated despite the repeal of the statute under which he was initially charged. The plain language of Utah's general saving statute, Utah Code section 68-3-5, permits a pending criminal prosecution to continue unaffected by the repeal of the underlying criminal offense. Additionally, this court's precedent originating with *Belt v. Turner*, 479 P.2d 791 (Utah), *aff'd on reh'g*, 483 P.2d 425 (Utah 1971), applies

only to ameliorative sentencing amendments, not to repeals of the underlying criminal offense.

¶44 In this case, the State initiated its prosecution of Cooke before the legislature repealed the criminal statute underlying the charges, so the general saving statute protects the prosecution from abatement. And, because the question of whether the saving statute applies to ameliorative sentencing amendments is not before us, *Belt* and its progeny have no application here. Accordingly, we affirm the district court's order denying Cooke's motion to dismiss and remand for further proceedings under the original statute.

———————