2025 UT App 195

# THE UTAH COURT OF APPEALS

GERALD A. SMITH,
Appellee,
*v.*
FRANCISCO JOSE CREECH AND WALTER CREECH,
Appellants.

Opinion
No. 20240793-CA
Filed December 26, 2025

First District Court, Logan Department
The Honorable Spencer D. Walsh
No. 210100100

Joseph J. Joyce, Bryan J. Stoddard, Michael J. Collins,
Jonathan P. Barnes Jr., Andrew D. Wright, and
Cassidy Ellis, Attorneys for Appellants

Brandon J. Baxter and Loren K. Peck,
Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and AMY J. OLIVER
concurred.

MORTENSEN, Judge:

¶1 Francisco Jose Creech was driving without a license when he crashed into a school bus that was stopped and unloading students. The bus's driver, Gerald Smith, sustained an injury to his neck. He sued Francisco and Walter Creech, Francisco's father, for negligence.[1] At the conclusion of a four-day trial, a jury

---

1. Because Francisco and Walter share the same last name, we refer to them individually by their first names for clarity and with no disrespect intended by the apparent informality, and we refer

(continued…)

returned a verdict for Smith, awarding him nearly $670,000 in damages.

¶2    On appeal, the Creeches argue that the district court (1) erred in denying their motion for a directed verdict related to some of Smith's medical expenses and (2) abused its discretion when it excluded various evidence. Because Smith failed to establish the reasonableness of the medical expenses he incurred after March 2020, we agree that the court should have directed a verdict on this issue in favor of the Creeches. We also agree that the court abused its discretion when it barred the Creeches from offering any evidence of Smith's other medical issues that they could not connect to the asserted damages with expert testimony. While we discern no error in the court's other challenged rulings, we nonetheless reverse and remand this case for the court to (1) grant the motion for a directed verdict and (2) hold a new trial on general damages.

## BACKGROUND

### *The Crash*

¶3    Although Francisco had a learner's permit at one point, he had not obtained a driver license when Walter bought a Chevrolet Tracker for Francisco's and the rest of the family's use. One day in March 2018, Francisco was driving the Tracker 55 miles per hour and adjusting the radio when he struck a school bus that was stopped to unload students. Smith, the bus's driver, sustained a

---

to them together as the Creeches. In the proceedings below, the Creeches were represented by separate counsel. However, they have jointly appealed this case. For this reason, and because doing so does not affect our analysis, we refer to actions taken by either Francisco or Walter in the proceedings below as actions taken by the Creeches.

neck injury in the crash, which required treatment. He also stopped driving the school bus because doing so exacerbated the pain caused by the crash. He sued the Creeches, asserting claims for negligent operation of a motor vehicle against Francisco and negligent entrustment of a vehicle against Walter.

### Smith's Pretrial Motions

¶4    Smith filed various motions before trial. In one, he asked the district court to admit a summary of his post-accident medical bills. The Creeches opposed the motion, arguing that it was Smith's "burden to lay proper foundation at trial for each and every item."[2] The Creeches also quoted *Gorostieta v. Parkinson*, 2000 UT 99, ¶ 35, 17 P.3d 1110, for the "general rule" that "once injuries have been shown, evidence is required to show that the medical expenses accurately reflect the necessary treatment that resulted from the injuries and that the charges are reasonable." In response, Smith contended that he had disclosed all the bills to the Creeches and that they had not made a specific objection to any of them. The court granted the motion, concluding that Smith properly disclosed "the medical documents that [were] the basis

---

2. The Creeches also lodged an objection to Smith's pretrial disclosure of the medical bills and the related summary on the ground that Smith would "need to lay proper foundation for medical bills claimed at trial." Specifically, the Creeches brought the "objection to hold [Smith] to his burden at trial to prove, through adequate foundation, that each medical bill was reasonable in cost [and] accurately reflective of the treatment provided, and that the treatment was medically necessary and causally related to the accident." The Creeches' pretrial opposition and related objection were important because, under rule 26(a)(5)(B) of the Utah Rules of Civil Procedure, unraised objections, other than those "under Rules 402 and 403 of the Utah Rules of Evidence . . . are waived unless excused by the court for good cause."

for [the] summary" under rule 1006 of the Utah Rules of Evidence.[3]

¶5      In another motion, Smith sought "an order excluding *all* evidence, testimony, and/or arguments regarding injuries [he] suffered . . . that [were] unrelated to the damages sought and that ha[d] no causal connection to the injuries at issue in this case." (Emphasis added.) The Creeches responded that the motion was "premature" because (1) it was not clear that the experts would agree that these other issues were unrelated to the damages claimed by Smith and (2) these issues could "become relevant for some other" reason at trial. Smith responded that it was "too late" for the Creeches to designate an expert to testify about the unrelated medical issues. Relying on *Harris v. ShopKo Stores, Inc.*, 2013 UT 34, 308 P.3d 449, the district court agreed with Smith and granted the motion. Specifically, the court explained that Smith was "not seeking damages related to his carpal tunnel syndrome, hip degeneration, hip replacements, or medical issues involving his legs." "Because the deadline for expert witness disclosures" had expired, and because the Creeches "failed to previously disclose how [Smith's] carpal tunnel syndrome or hip or leg issues [were] relevant to the case at hand," the court barred the Creeches "from discussing these preexisting conditions or any other preexisting condition at trial which [was] not related to the crash."

---

3. Rule 1006 allows a party to "use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Utah R. Evid. 1006. However, "[t]he proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time or place." *Id.* The court may also order that the proponent produce those records in court. *Id.*

¶6     In a third motion, Smith asked that the court bar Dr. Mattingly, the Creeches' non-retained expert,[4] from testifying about purported surveillance footage of Smith after the accident because the Creeches never disclosed the video footage. The Creeches responded that they did not have the videos and had never reviewed them, but they argued that Dr. Mattingly should be allowed to testify about what she saw in the footage.[5] The court sustained Smith's objection under rules 702 and 901 of the Utah Rules of Evidence and rule 26(d) of the Utah Rules of Civil Procedure. The court found that there were "simply too many questions about who took the video surveillance and whether the videos were edited or altered." Particularly troubling to the court was that Smith never received "a copy of the videos" and that Dr. Mattingly could not confirm "that the videos [were] an accurate representation of [Smith]."

*Smith's Pretrial Objections*

¶7     The parties stipulated to record the deposition testimony of two expert witnesses—Dr. Mattingly and Smith's expert, Dr. Giovanniello—who would not be available to testify at trial. The Creeches asked Dr. Giovanniello about Smith's lower back pain and his related surgery that predated the accident. Smith objected to the question based on the court's order barring evidence of the unrelated medical issues. The court sustained the objection, concluding that the Creeches' "experts never disclosed any

---

4. Dr. Mattingly conducted an "independent medical evaluation" of Smith in connection with Smith's workers' compensation claim. Dr. Mattingly also authored a report detailing her findings from the evaluation.

5. The videos were apparently acquired by a private investigator in connection with the workers' compensation claim.

opinion as to how [Smith's] low back conditions and treatment [were] relevant to [his] injuries tied to this particular crash."[6]

¶8      Smith also raised several objections to Dr. Mattingly's testimony. One centered on her opinions about the undisclosed surveillance footage that the court had previously resolved. Another objection related to whether Dr. Mattingly was qualified to opine on biomechanics under rule 702 of the Utah Rules of Evidence. Smith argued that the issue was outside Dr. Mattingly's "expertise as a medical doctor," that she "did none of the work . . . required to reach an opinion about forces or thresholds of injury," and that her biomechanical opinions had not been disclosed. In response, the Creeches asserted that Dr. Mattingly had significant "experience looking at the biomechanics of injuries" and that "she commonly view[ed] videos of incidents and people getting injured" as part of "her role in evaluating workplace injuries." Therefore, the Creeches argued, Dr. Mattingly was qualified to opine about biomechanics. The court agreed with Smith and sustained the objection under rule 702 and under rule 26(d)(4) of the Utah Rules of Civil Procedure.

*The Trial*

¶9      The case proceeded to a four-day jury trial. During the Creeches' cross-examination of Smith's son, Smith became concerned that the Creeches were treading close to violating the court's ruling barring evidence of the other medical issues. Smith requested a sidebar and asserted the Creeches were "trying to

---

6. At oral argument on the objection, the Creeches asserted that evidence of Smith's lower back pain was relevant in assessing his credibility. The court conducted a balancing test under rule 403 of the Utah Rules of Evidence and concluded that the evidence was relevant but that its probative value was substantially outweighed by the danger of confusing the issues and wasting time.

make an allocation" without an expert. In response, counsel for the Creeches stated, "I'm not asking for allocation. We're talking about life in general. What has changed for the quality of life of this man? And right now, they're telling us it's the bus accident, and I want to explore that with [Smith's son]." He also stated, "I don't want to violate [the court's] ruling, but I'm going to get close, and . . . my intent is not to get there. It's going to be based upon what [Smith's son] tells me."

¶10 After Smith rested his case, the Creeches moved for a partial directed verdict related to expenses for Smith's medical treatments after March 19, 2020, because Dr. Giovanniello had not reviewed any of Smith's medical records beyond that date, including the records for his 2022 neck surgery. The Creeches argued that the "jury would simply be speculating about . . . linkage that is beyond its knowledge and experience" because Smith failed to offer expert testimony "linking the injury to the necessity" of the treatments. The Creeches also invoked *Gorostieta* and argued, "[Dr. Giovanniello] didn't talk about the necessity or reasonableness of the expenses on any of the expenses at all. So in that context, there might even be a basis for all of the medical expenses to be struck."

¶11 In response, Smith pointed to Dr. Giovanniello's testimony that he had recommended that Smith get neck surgery to address injuries he sustained in the accident and that he understood Smith had undergone that surgery. In their rebuttal, the Creeches did not address the reasonableness of the expenses and instead focused on the causal link between the injury and the surgery. Without commenting on the reasonableness of the expenses, the court denied the motion for a directed verdict, concluding that Dr. Giovanniello's testimony was sufficient to establish the link between the injury and the necessity of the surgery. After its ruling, the court asked counsel for both sides if there was "anything else" that the parties "need[ed] to address on that point." Both sides responded in the negative.

¶12    After the case was submitted, the jury returned a verdict for Smith, finding the Creeches liable and awarding Smith nearly $670,000 in damages, including $302,400 in general damages.

ISSUES AND STANDARDS OF REVIEW

¶13    On appeal, the Creeches maintain that the court erred in denying their motion for a directed verdict, asserting that Smith did not demonstrate the reasonableness of the medical expenses he incurred after March 19, 2020. We "review the . . . denial of a motion for directed verdict for correctness." *Proctor v. Costco Wholesale Corp.*, 2013 UT App 226, ¶ 6, 311 P.3d 564. Under this standard, "we review the evidence and all reasonable inferences that may fairly be drawn therefrom in the light most favorable to the party moved against, and [we] will sustain the denial if reasonable minds could disagree with the ground asserted for directing a verdict." *Beard v. K-Mart Corp.*, 2000 UT App 285, ¶ 5, 12 P.3d 1015 (cleaned up). On the other hand, "we will reverse a [district] court's denial of a motion for a directed verdict . . . if, [when] viewing the evidence in the light most favorable to the prevailing party, we conclude that the evidence is insufficient to support the verdict." *Neely v. Bennett*, 2002 UT App 189, ¶ 14, 51 P.3d 724 (cleaned up).

¶14    The Creeches also argue that the court erroneously excluded various evidence under rules 403 and 702 of the Utah Rules of Evidence and rule 26(d) of the Utah Rules of Civil Procedure. We review a court's evidentiary rulings and discovery orders for an abuse of discretion. *Anderson v. Larry H. Miller Commc'ns Corp.*, 2015 UT App 134, ¶ 17, 351 P.3d 832 (evidentiary rulings); *Phillips v. Skabelund*, 2021 UT App 2, ¶ 16, 482 P.3d 237 (discovery orders). However, we review a court's "exercise of its discretion . . . to ensure that no mistakes of law affected [the] court's use of its discretion." *Eskelson ex rel. Eskelson v. Davis Hosp. & Med. Center*, 2010 UT 59, ¶ 5, 242 P.3d 762 (cleaned up). And as

is relevant in this case, we review a court's interpretation of caselaw for correctness. *State v. Cooke*, 2025 UT 6, ¶ 19, 567 P.3d 541.

## ANALYSIS

### I. Directed Verdict

A.    Preservation

¶15    Smith argues that the Creeches failed to preserve their argument on the court's directed verdict ruling. Specifically, he argues that the Creeches "did not timely object to the reasonableness of Smith's medical bills" and that the directed verdict "was not a proper objection to the adequacy of foundation regarding reasonableness of bills." We disagree.[7]

---

7. Nonetheless, before we proceed to our discussion, we observe that the Creeches' principal brief does not comply with rule 24(a)(5) of the Utah Rules of Appellate Procedure. As is relevant here, the rule provides that "[p]rincipal briefs must contain . . . [a] statement of the issue" and, for each issue, "(A) the standard of appellate review with supporting authority; and (B) citation to the record showing that the issue was preserved for review; or a statement of grounds for seeking review of an issue not preserved." Utah R. App. P. 24(a)(5). In the "Statement of the Issues" section of their principal brief, the Creeches merely state the four issues they raise on appeal. They neither set forth the applicable standards of review nor provide citations to the record showing where the issues were preserved or otherwise explain why an exception to the preservation rule applies. However, the failure to strictly comply with the dictates of rule 24(a)(5) is not necessarily fatal. *See In re B.D.*, 2024 UT App 104, ¶ 37 n.9, 556 P.3d

(continued…)

¶16 We will not review an issue on appeal unless the appellant shows that it is preserved or can otherwise demonstrate that an exception applies. *Cove at Little Valley Homeowners Ass'n v. Traverse Ridge Special Services Dist.*, 2022 UT 23, ¶ 23, 513 P.3d 658. To preserve an issue, a party must present it "in such a way that the [district] court has an opportunity to rule on" it. *Scott Anderson Trucking Inc. v. Nielson Constr.*, 2020 UT App 43, ¶ 23, 462 P.3d 822 (cleaned up). While preservation "does not turn on the use of magic words or phrases, . . . the party must sufficiently raise the issue to a level of consciousness before the [district] court." *Id.* (cleaned up).

¶17 When they moved for a directed verdict at trial, the Creeches read from *Gorostieta v. Parkinson*, 2000 UT 99, ¶ 35, 17 P.3d 1110, specifically highlighting the proposition that a party seeking to offer medical expenses into evidence must "show that the medical expenses [accurately] reflect the necessary treatment that resulted from the injuries and that the charges are reasonable." The Creeches proceeded to argue that Dr. Giovanniello "didn't talk about the necessity or reasonableness of the expenses on any of the expenses at all" and that, consequently, "there might even be a basis for all of the medical expenses to be struck." The court denied the motion without addressing the reasonableness of the expenses. When asked if there was anything else that needed to be addressed with respect to the directed verdict, the Creeches answered in the negative.

¶18 To be sure, the Creeches could have asked the court to rule specifically on reasonableness when they were asked if anything else needed to be addressed. But the district court would have

---

86. And it isn't in this case because, elsewhere in their briefing, the Creeches state the applicable standards and demonstrate that the issues were in fact preserved. *See id.* But we remind litigants that it is always best practice to follow the requirements of the rules in the first instance.

likely viewed this as the Creeches attempting to reargue their point after the court had ruled—a practice unwelcome by most district courts. And their failure to respond to the district court's clarifying question must be considered in context. Smith did not address their reasonableness argument in responding to the objection, so the Creeches presumably focused on what Smith did say. Moreover, the Creeches had cited *Gorostieta*'s rule on reasonableness in two separate pretrial filings, including once to specifically argue, among other things, that Smith had the "burden at trial to prove, through adequate foundation, that each medical bill was reasonable in cost." These filings informed the district court on the issue, thus highlighting that it was an argument the Creeches intended to make. Against this backdrop, when they highlighted *Gorostieta*'s language about reasonableness and then further argued the reasonableness point, the Creeches raised the issue to an adequate level of consciousness before the district court. *See Scott Anderson Trucking Inc.*, 2020 UT App 43, ¶ 23. Therefore, the issue is preserved.

B.     Merits

¶19     On the merits, the Creeches argue that the district court should have directed a verdict in their favor "for medical expenses incurred after March 19, 2020," because Smith "failed to adduce foundational 'reasonableness' evidence for the claimed medical expenses incurred after that date." We agree.

¶20     "[O]nce injuries have been shown, evidence is required to show that the medical expenses accurately reflect the necessary treatment that resulted from the injuries and that the charges are reasonable." *Gorostieta v. Parkinson*, 2000 UT 99, ¶ 35, 17 P.3d 1110. As we explained in *Stevenett v. Wal-Mart Stores, Inc.*, 1999 UT App 80, 977 P.2d 508, a party can provide this foundation in a number of ways. Obviously, it can call the medical provider who rendered the service or a representative from the insurance company to testify about the reasonableness of the expenses. *Id.* ¶ 31. The

party can also provide foundation by offering the bills and "testf[ying] that the proffered bills were for medical expenses arising from the injuries received in the [underlying incident], were forwarded for payment to [the party's] insurance company, and were paid without objection by the insurance company." *Id.* ¶ 32.

¶21    In the proceedings below, Dr. Giovanniello testified that he had recommended that Smith get neck surgery and that he understood Smith had undergone the procedure. That testimony related to the *necessity* of the surgery.[8] Dr. Giovanniello offered no testimony concerning the reasonableness of the expenses; indeed, he expressly testified he did not review any such records. And Smith offered no other evidence of the *reasonableness* of the incurred expenses, such as whether the bills were actually paid by the insurance company without objection.[9] A court has no way to assess whether a medical bill, standing alone, constitutes evidence of a reasonable charge. Holding otherwise would be tantamount to a declaration that "necessity" and "reasonableness" are

---

8. It is worth mentioning that Dr. Giovanniello had not reviewed any of the medical records of the surgery so it is not even clear that the surgery he recommended and the surgery that were performed were the same.

9. We think it important that Smith has not pointed to any other documentary evidence or testimony related to the reasonableness of the expenses. And while we are under no obligation to comb through the record to ascertain whether Smith testified that the bills had been paid without objection, *see, e.g., Allen v. Friel*, 2008 UT 56, ¶ 9, 194 P.3d 903 ("An appellate court is not a depository in which a party may dump the burden of argument and research." (cleaned up)), we have done so and have been unable to identify any such testimony.

synonymous. To the extent that *Stevenett* did not make it clear, the two concepts are indeed distinct.

¶22    Smith relies on two cases to argue that he "laid sufficient foundation" to establish that the post-March 2020 medical expenses he incurred were reasonable. In *Klein v. Harper*, 186 N.W.2d 426 (N.D. 1971)—a negligence case that we cited in *Stevenett*, 1999 UT App 80, ¶ 31—the court determined "that there [was] evidence of causal connection and necessity but no evidence as to reasonable value of the services except the actual amount" of the incurred medical expenses. *Klein*, 186 N.W.2d at 432. Nonetheless, the court admitted the evidence because there was no objection to "[t]he reasonableness of the expenses." *Id.* By contrast, the Creeches objected no fewer than three times to evidence of Smith's medical expenses on reasonableness grounds. Therefore, *Klein* does not help Smith's argument.

¶23    The other case upon which Smith relies is *Florez v. Schindler Elevator Corp.*, 2010 UT App 254, 240 P.3d 107. There, the defendant had moved for a directed verdict because the plaintiff allegedly provided neither "an evidentiary basis for . . . past [and] future medical expenses" nor any "expert testimony regarding [the plaintiff's] life expectancy." *Id.* ¶ 33. The court denied the motion, and we affirmed. *Id.* ¶¶ 1, 9, 33. We noted that the parties stipulated to submit summaries of the plaintiff's medical bills to the jury that "broke down [the plaintiff's] various medical bills by date and provider." *Id.* ¶ 33.

¶24    Smith argues that "[i]f the billing summary discussed in *Florez* was sufficient foundation for reasonableness," then the foundation he laid in the instant case "was also sufficient." But the facts here are demonstrably different because the Creeches did not stipulate to the reasonableness of the expenses or any summary of the bills. In fact, they expressly objected to Smith's use of a summary in this case. The reasonableness of the expenses

simply was not at issue in *Florez,* so that case does also not help Smith here.

¶25 In short, Smith did not adduce evidence of the reasonableness of the medical expenses he incurred after March 19, 2020.[10] Consequently, the evidence—even when we view it in the light most favorable to Smith—was not sufficient to support the district court's denial of the directed verdict motion. We therefore reverse the denial of that motion and remand this matter so that the judgment may be amended accordingly.[11]

## II. Evidentiary Rulings and Discovery Orders

¶26 The Creeches also argue that the district court abused its discretion in excluding (1) any evidence of Smith's preexisting and subsequent medical issues that the Creeches did not link to Smith's asserted damages with expert testimony, (2) Dr. Mattingly's testimony about the surveillance footage of Smith, and (3) Dr. Mattingly's biomechanical-engineering opinions. We address each argument in turn.

---

10. Smith is correct that "expert testimony is not required to lay foundation for the reasonableness of medical bills" under Utah law. *See Stevenett v. Wal-Mart Stores, Inc.*, 1999 UT App 80, ¶ 31, 977 P.2d 508 (declining to require expert medical testimony to establish reasonableness of medical expenses). The problem is that Smith has not pointed us to anything in the record suggesting that he offered *any* evidence that the post-March 2020 expenses were reasonable. *See supra* note 9.

11. We also acknowledge that this reversal necessitates a reconsideration of general damages since the evidentiary landscape in which the jury made its general damages assessment has materially changed.

A.    Other Medical Issues

¶27    The Creeches maintain that the district court abused its discretion when it excluded all evidence of Smith's "separate injuries that occurred before and after the crash." We agree because the court's ruling relied on an erroneous interpretation of *Harris v. ShopKo Stores, Inc.*, 2013 UT 34, 308 P.3d 449. *See State v. Cooke*, 2025 UT 6, ¶ 19, 567 P.3d 541 ("A district court's interpretation of . . . caselaw presents [a] question[] of law that we review for correctness."). And that error demonstrably harmed the Creeches because it fundamentally altered the complexion of the evidence considered by the jury as it pertained to general damages in this case.

¶28    In *ShopKo*, the plaintiff was sitting on a display chair at a store when the chair broke and she fell to the ground. 2013 UT 34, ¶ 3. She suffered "deep abdominal pain" as a result and believed that "something had come loose from a previous surgery." *Id.* She sued the store, asserting a claim for negligence. *Id.* ¶ 6. After the parties rested, the district court instructed the jury on apportionment. *Id.* ¶ 12. The plaintiff objected to the instruction because "there was no expert testimony to guide the jury on how to apportion damages" and because the instruction addressed "an aggravation of symptomatic preexisting conditions" when "the evidence . . . [did] not support that finding." *Id.* ¶ 13. The court overruled the objection, concluding that one of the plaintiff's treating providers testified that her fall "may have aggravated a degenerative disc disorder," which meant that there *was* "evidence of a preexisting condition." *Id.* The jury found in favor of the plaintiff but awarded her less than half of her requested medical expenses and just $1,000 in general damages. *Id.* ¶ 14.

¶29    On appeal, this court reversed and ordered a new trial, and the supreme court affirmed our reversal. *Id.* ¶ 41. The supreme court explained that there was "no expert testimony in the record on the *extent* to which [the plaintiff's other] conditions contributed

to her pain, if at all." *Id.* ¶ 37. Without such testimony, the court concluded that the instruction on apportionment was erroneous because "the evidence failed to supply the jury with a nonarbitrary basis for apportioning damages." *Id.* ¶ 41.

¶30 As we have explained elsewhere, "the issue in *ShopKo* was whether there was sufficient evidence to support giving an apportionment instruction to the jury." *Schreib v. Whitmer*, 2016 UT App 61, ¶ 17, 370 P.3d 955 (citing *ShopKo*, 2013 UT 34, ¶ 31). "Although the *ShopKo* court observed that evidence of preexisting conditions must overcome the standard evidentiary hurdles in order to be admissible, the court rendered no holding as to whether the evidence of the plaintiff's prior car accidents and preexisting conditions was admissible at trial." *Id.* (cleaned up). Instead, the case centered on "whether there was sufficient evidence to support giving an apportionment instruction to the jury." *Id.*[12]

---

12. Like the instant case, *Schreib* involved a car accident where the plaintiff was rear ended by the defendant. *Schreib v. Whitmer*, 2016 UT App 61, ¶ 2, 370 P.3d 955. The defendant sought to offer evidence of the plaintiff's "preexisting medical conditions and prior automobile accidents." *Id.* ¶ 4. The plaintiff "argued that the evidence was not relevant and should be excluded because [the defendant] had not designated an expert who could provide testimony that any preexisting condition, of which might be adduced by [the defendant], contributed in any way to [the plaintiff's] present condition and/or the injuries received in the collision at issue." *Id.* (cleaned up). The district court determined that the evidence was relevant and admitted it. *Id.* ¶ 5. On appeal, we distinguished *ShopKo* and affirmed. *Id.* ¶¶ 1, 16–17. We explained that the evidence was relevant because it "had a tendency to disprove [the plaintiff's] contention that the [defendant's negligence] was the sole cause of her injuries and the resulting medical care costs." *Id.* ¶ 21.

¶31 Here, the district court relied on *ShopKo* to bar all evidence of Smith's previous and subsequent medical issues that the Creeches could not connect to Smith's asserted damages with expert testimony. In so ruling, the district court appears to have conflated admissibility and relevance on the one hand with apportionment on the other. On appeal, Smith's argument suffers from the same flaw. For example, he contends that "[t]he general rule is that evidence of a pre-existing condition is irrelevant unless the defendant presents a 'nonarbitrary basis for apportioning the cause of [the plaintiff's] postaccident condition . . . between the accident and his preexisting condition.'" (Quoting *Gines v. Edwards*, 2017 UT App 47, ¶ 48, 397 P.3d 612 (omission and second alteration in original).) In fact, the "general rule" of which the *Gines* court spoke was that a plaintiff "is entitled to recover for all harm . . . proximately caused by a defendant's negligence, including aggravation of a preexisting condition." 2017 UT App 47, ¶ 35 (cleaned up). We do not read that language to require that a district court bar a defendant from adducing relevant evidence of a plaintiff's preexisting condition that it cannot necessarily tie to the plaintiff's asserted damages with expert testimony. *Cf. Schreib*, 2016 UT App 61, ¶ 17 (explaining that the plaintiff's reliance on *ShopKo*'s "apportionment language" was "misplaced" because "the issue in *ShopKo* was whether there was sufficient evidence to support giving an apportionment instruction to the jury").

¶32 Despite Smith's argument to the contrary, the evidence of his other medical issues was plainly relevant in this case, even on those issues for which the Creeches didn't have expert testimony. In its computation of general damages, for example, the jury didn't need expert testimony to be able to determine whether Smith's quality of life was affected by the accident. *Cf. Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1245 (10th Cir. 2000) ("Attempts to quantify the value of human life have met considerable criticism in the literature of economics as well as in the federal

court system. Troubled by the disparity of results reached in published value-of-life studies and skeptical of their underlying methodology, the federal courts which have considered expert testimony on hedonic damages in the wake of [*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993),] have unanimously held quantifications of such damages inadmiss[i]ble.").

¶33   It appears that the district court's ruling had the practical effect of keeping the Creeches from eliciting this type of testimony at trial, not just from expert witnesses, but also from fact witnesses such as Smith's son or Smith himself.[13] This effect can be seen in how Smith briefs the issue. He argues that the court "allowed extensive 'before and after' evidence about [his] function at work and at home." But we think it telling that, of the eleven citations to the record in support of this assertion, ten are based on testimony elicited by Smith, not the Creeches.[14] In fact, Smith

---

13. It also isn't clear why the Creeches should have been barred from asking Dr. Giovanniello questions about Smith's unrelated medical issues. By Dr. Giovanniello's own admission, he reviewed Smith's medical records from "before the crash" and "after the crash." However, we discern no error in the court's ruling on the motion in limine to the extent it barred the *Creeches'* experts from opining on Smith's unrelated medical issues based on a lack of disclosure under rule 26(d)(4) of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 26(d)(4) ("If a party fails to disclose or to supplement timely a disclosure or response to discovery, that party may not use the undisclosed witness, document, or material at any hearing or trial unless the failure is harmless or the party shows good cause for the failure.").

14. The lone instance cited by Smith of such testimony elicited by the Creeches was that Smith "had to quit driving [the] bus" after the accident, which did not relate to any of his conditions or other health limitations.

likely would have had trouble finding many such instances in the record, given the Creeches' comment during trial that they were careful with their questioning so as not to run afoul of the court's ruling. *See supra* ¶ 9.

¶34   This does not end the inquiry, however, as the Creeches must show that the error was harmful to obtain reversal. *See Glacier Land Co. v. Claudia Klawe & Assocs., LLC*, 2006 UT App 516, ¶ 13, 154 P.3d 852. We conclude that the error was in fact harmful in this case.

¶35   The Creeches assert that Smith falsely "painted the picture that . . . everything that[] [had] changed since the bus accident [was] because of the bus accident." They also argue that "[i]f the jury would have heard the full extent of [Smith's] non-accident injuries, which arose before and after the crash, it very likely would not have awarded such a substantial amount in damages" to Smith. In response, Smith argues that the Creeches "could not be harmed by an inability to seek an apportionment of damages . . . because [they] chose not to seek an apportionment" and because they were still allowed to "vigorously cross examine Smith without getting into an impermissible area that the [court] already found to not be relevant to this jury's determination."

¶36   Smith's argument overlooks that the district court's decision fundamentally altered the evidentiary landscape with respect to general damages, which are meant to "compensate an individual for a diminished capacity for the enjoyment of life." *Pinney v. Carrera*, 2020 UT 43, ¶ 36, 469 P.3d 970 (cleaned up). Such damages seek to quantify the "difference between what life would have been like without the harm done and what it is like as a result of the harm." *Id.* (cleaned up). By barring *all* testimony about Smith's other medical issues, the court kept the jury from getting the full picture on how Smith's enjoyment of life was actually affected by the Creeches' negligence. In a case where the jury

awarded Smith more than $300,000 in general damages, the court's error was clearly harmful.

¶37    In sum, the district court relied on an erroneous interpretation of *Harris v. ShopKo* to prevent the Creeches from eliciting relevant testimony from lay witnesses about Smith's other medical issues. Because that ruling dramatically altered the evidentiary picture of general damages in this case, we conclude that the error was harmful. Therefore, the Creeches are entitled to a new trial on general damages.[15]

B.    Dr. Mattingly's Surveillance-Based Opinions

¶38    The Creeches argue that the district court abused its discretion when it excluded Dr. Mattingly's opinions about the surveillance footage. We disagree.

¶39    Under rule 702(b) of the Utah Rules of Evidence, a party introducing expert testimony based on "[s]cientific, technical, or

---

15. Smith also argues that the court properly excluded evidence of his lower back pain under rule 403 of the Utah Rules of Evidence because its "probative value was substantially outweighed by confusing the issues, . . . confusing the jury, and wasting time." We disagree. The court conducted the balancing test on a faulty premise—that evidence of Smith's other medical issues, like the lower back pain, was only marginally relevant. As we have explained, such evidence was highly relevant as it related to general damages. We think the court's calculus would have changed on the balancing test, particularly because it stated that it was "concerned about having a trial within a trial[,] . . . confusing the issues, [and] wasting the jury's time on issues *that don't amount to much.*" (Emphasis added.) It appears upon this record that the court's assessment was too narrowly focused on issues of potential apportionment and did not consider how its ruling would affect the jury's consideration of general damages.

other specialized knowledge" must make a "threshold showing" that "the principles or methods . . . underlying . . . the testimony (1) are reliable, (2) are based upon sufficient facts or data, and (3) have been reliably applied to the facts." Here, the district court concluded that there were "too many questions about who took the video surveillance and whether the videos were edited or altered." To be sure, the court could have been clearer about the specific basis for its ruling. It noted that there were "not sufficient indicia of *reliability* to permit Dr. Mattingly to testify about what she saw on the videos and what conclusions she drew from those observations." (Emphasis added.) As the Creeches note, "rule 702(b)'s reliability requirement does not apply to expert witnesses' conclusions, but rather to the principles and methods underlying their conclusions." *Taylor v. University of Utah*, 2020 UT 21, ¶ 40, 466 P.3d 124 (cleaned up).

¶40     But the "indicia of reliability" also go to the sufficiency of the underlying facts and data. Dr. Mattingly could not confirm that the surveillance videos accurately depicted Smith. And the Creeches do not assert that they themselves tried to verify that Smith was in the videos. Under these circumstances, we cannot say that the district court's ruling exceeded the limits of reasonability. *See ConocoPhillips Co. v. Utah Dep't of Transp.*, 2017 UT App 68, ¶ 12, 397 P.3d 772 (noting that we will not reverse a district court's decision to exclude expert testimony under rule 702 "unless it exceeds the limits of reasonability").[16]

---

16. Because the district court properly excluded Dr. Mattingly's surveillance-based opinions under rule 702, we need not address whether it abused its discretion in concluding that the Creeches' expert disclosure was deficient under rule 26 of the Utah Rules of Civil Procedure or that the Creeches were required to lay foundation for the testimony under rule 901 of the Utah Rules of Evidence.

C.     Dr. Mattingly's Biomechanical Opinions

¶41    The Creeches argue that the district court abused its discretion when it excluded Dr. Mattingly's biomechanical opinions. We again disagree.

¶42    Rule 26(a)(4)(E) of the Utah Rules of Civil Procedure requires "a party intend[ing] to present evidence at trial" from a non-retained expert witness to "serve on the other parties a written summary of the facts and opinions to which the witness is expected to testify." Smith observes that "the Creeches stated that Dr. Mattingly would testify consistent with a prior report and deposition, leaving Smith to sift through voluminous materials."

¶43    In the deposition, Dr. Mattingly testified that she did not "have a degree in biomechanics" or otherwise "do research or publish in the field of biomechanics." In the report, Dr. Mattingly (1) detailed the results of the physical examination that she performed on Smith, (2) summarized Smith's medical records dating back to July 1998, (3) summarized her review of the accident and surveillance videos noted above, and (4) offered her general impressions. The Creeches point to a snippet in the report to claim that they provided notice to Smith that Dr. Mattingly would testify about biomechanical issues. In that snippet, she states, "I was provided with a copy of video taken inside the bus at the time of the accident. . . . The driver of the bus is seen at the time of impact being jerked forward quickly, but [his] whole upper body moves forward, not just the neck. There is no significant neck flexion or extension noted."

¶44    We take the Creeches' point that "the distinction between motion and force that [Smith] attempts to draw is without a difference, as the motion depicted in the accident video was determined by (and illustrative of) the level of force involved in the collision." But given that the only references to "biomechanics" during her deposition make clear that Dr.

Mattingly did not have a formal background in the topic, we cannot say that the district court abused its discretion when it excluded Dr. Mattingly's biomechanical opinions under rule 26(d)(4) of the Utah Rules of Civil Procedure. *See Green v. Louder*, 2001 UT 62, ¶ 37, 29 P.3d 638 (explaining that "[district] courts have broad discretion in matters of discovery" and that we "will not find abuse of discretion absent an erroneous conclusion of law or where there is no evidentiary basis for the [district] court's ruling" (cleaned up)).[17]

CONCLUSION

¶45 The district court should have granted the Creeches' motion for a directed verdict because Smith offered no evidence of the reasonableness of the medical expenses he incurred after March 19, 2020. The court also abused its discretion when it excluded all evidence of Smith's other medical issues that the Creeches could not connect to the asserted damages with expert testimony. The error was harmful because it fundamentally altered the evidentiary landscape regarding general damages in this case. While we discern no error in the other challenged rulings, we reverse and remand this matter for the district court to (1) direct a verdict on Smith's post-March 2020 medical expenses in the Creeches' favor and (2) hold a new trial on general damages.

———————

17. Because the district court acted within its discretion in excluding Dr. Mattingly's biomechanical opinions under rule 26(d)(4), we need not address whether the court erroneously excluded the opinions under rule 702 of the Utah Rules of Evidence.